(No. 33680.—

ERMA McNELY, Exrx., Appellant, *vs.* BOARD OF EDUCATION OF COMMUNITY UNIT SCHOOL DISTRICT No. 7, Appellee.

*Opinion filed May 23, 1956—Rehearing denied September 24, 1956.*

144

Klingbiel, and Hershey, JJ., dissenting.

A. G. Whitehouse, of Gillespie, and Hemphill & Kelsey, of Carlinville, for appellant.

D. A. McGrady, of Gillespie, for appellee.

Mr. Justice Davis delivered the opinion of the court:

Plaintiff, as executrix of the will of Earl J. McNely, deceased, filed complaint in the circuit court of Macoupin County against the Board of Education of Community Unit School District No. 7 of said county, seeking to re-

cover damages for the wrongful dismissal of decedent as teacher and superintendent. Defendant filed answer denying the material allegations of the complaint and asserting affirmative defenses. Plaintiff filed replication denying such defenses and issues were joined on the pleadings. The cause was submitted to a jury after denial of defendant's motion for directed verdict, and the jury found the defendant not guilty. The trial court entered judgment for the plaintiff in the amount of $4900 notwithstanding the verdict. On appeal to the Appellate Court, the judgment was reversed, (5 Ill. App. 2d 84) and this court granted plaintiff's petition for leave to appeal.

Mr. McNely died on July 3, 1952, and his executrix subsequently filed this complaint alleging that by reason of his employment for two consecutive school terms, decedent entered upon contractual continued service within the meaning of section 24—2 of the School Code and that his discharge by the board was wrongful and without cause, and that decedent was entitled to damages measured by the salary he would have received for the period ending with the date of his death.

The defendant raised the following defenses to this action: (1) the decedent was properly discharged; (2) the Teacher Tenure Law does not apply to non-teaching superintendents; (3) the issues in this case were presented in an earlier case which was abated in the Appellate Court, and the action of that court is *res judicata* of the issues here presented; (4) this action, being in contract, cannot lie because the decedent had no contract at the time of his dismissal; and (5) the plaintiff is barred from recovery herein because the decedent did not seek review of the action of the board of education in accordance with the provisions of the Teacher Tenure Law.

It appears from the evidence that decedent was employed as superintendent of the schools of the district for the 1948-1949 and the 1949-1950 school years. His em-

ployment was evidenced by written contracts of obsolete form which provided, "that this contract is subject to contractual continued service as provided in Sec. 127¾ of the Teacher's Tenure Law." During the 1950-1951 school year the decedent worked for the district without the issuance of further contract. On April 24, 1951, the board adopted a motion eliminating the job of superintendent and gave written notice to decedent that for reasons of economy, the office of superintendent was discontinued and that his services were terminated. This notice appeared to be based on the provisions of section 24—3 of the School Code (Ill. Rev. Stat. 1949, chap. 122, par. 24—3,) relating to dismissal due to discontinuance of some type of teaching service.

However, one of the school principals of the district was hired as superintendent of the district and as principal of the high school by resolution of the board of education adopted July 19, 1951. It is thus apparent from the record that the position of superintendent, which was eliminated on April 24, 1951, was reinstated on July 19, 1951, without the tender of such post to the decedent, as required by section 24—3 of the School Code. The notice of dismissal and the resolution on which it was based were bottomed solely on the elimination and discontinuance of the job of superintendent, rather than on dismissal for cause, and under the circumstances of this case the attempted dismissal of the decedent was not in compliance with the statute and he was under contractual continued service with the board.

We next consider the defendant's contention that the Teacher Tenure Law is not applicable to nonteaching superintendents. The relevant provisions of section 24—2 declare that "Any teacher who has been employed in any district as a full-time teacher for a probationary period of two consecutive school terms shall enter upon contractual continued service unless given written notice of dismissal

stating the specific reason therefor, by registered mail by the employing board at least sixty days before the end of such period." The term "teacher" is defined as "any or all school district employees regularly required to be certified under laws relating to the certification of teachers * * *." Ill. Rev. Stat. 1949, chap. 122, par. 24—2.

The Teacher Tenure Law was enacted primarily for the protection of educational personnel who, prior to its enactment in 1941, served at the pleasure of school directors or boards of education. Its object was to improve the Illinois school system by assuring personnel of experience and ability a contractual continued service status based upon merit rather than insecurity of employment based upon political, partisan or capricious consideration. *Donahoo* v. *Board of Education*, 413 Ill. 422; *Betebenner* v. *Board of Education*, 336 Ill. App. 448.

It was for the legislature rather than this court to determine who should be embraced within the scope of its purpose. There is specific statutory direction for the inclusion of educational administrative and supervisory personnel of the type school district in question within the provisions of the Teacher Tenure Law. Judicial construction is not required to accomplish this result. In enacting the Teacher Tenure Law the legislature recognized a distinction between school districts of fewer than 1,000 population, governed by school directors and those over 1,000 governed by boards of education. In applying tenure provisions to districts having directors the legislature included "all teachers, principals and superintendents" (Ill. Rev. Stat. 1949, chap. 122, par. 24—1.) By this provision the legislature evinced a clear determination that the policy of tenure was as applicable to superintendents and principals as to teachers. In the following sections of the act which apply to the larger districts having boards of education, the legislature recognized the existence of employees who assist the superintendent and principal, perform the many and complex re-

quirements of such positions, and, whose duties may be, in part, administrative, supervisory, and instructional in nature. Such employees of the larger type districts would not fit neatly into the three classifications of teacher, principal or superintendent. Tenure was designed for such educational personnel but not for clerical employees, janitors, custodians, maintenance men, etc., who, in many areas, are subject to the provisions of the Civil Service of Cities Act. (Ill. Rev. Stat. 1949, chap. 24½, pars. 39-77a incl.) It was the policy of the legislature to include within the Teacher Tenure Law only those employees required to be certified. It stated that policy by the simple method of defining teachers for the purposes of the act, as "any or all school district employees regularly. required to be certified under laws relating to the certification of teachers."

Faced with the clear statutory definition of the term "teacher" as used in the applicable portions of the act, the only proper inquiry for this court is whether superintendents are required to be certified. The defendant has pointed out that in other parts of the School Code, the legislature has recognized a difference between "teaching" and "supervising" and has given to the superintendent duties that are clearly supervisory rather than teaching. We freely grant that teaching and supervising are different functions both in common parlance and in fact and that this distinction is recognized by the legislature in other statutes. Likewise, in many sections of the School Code, the word "teacher" must be construed to include superintendents, principals, and supervisors if absurd results are to be avoided in statutory construction. (Ill. Rev. Stat. 1949, chap. 122, pars. 21—15, 21—21, 21—23, and 21—26.) Yet this circumstance is of no force here. The legislature was free to define "teacher" as used in the Teacher Tenure Law without regard to its common meaning. Indeed its definition here is less broad, and far more in accord with its generally accepted meaning than the definition of "teacher"

in the article relating to the teacher's retirement system. The legislature there not only included superintendents and principals within the meaning of the word "teacher," but also school nurses, librarians, county superintendents of schools and assistants, Superintendent of Public Instruction, and any person employed in his office as executive. Ill. Rev. Stat. 1949, chap. 122, par. 25—4.

Justice Cardozo set forth the rule of construction for such cases when speaking for the court in *Fox* v. *Standard Oil Co.* 294 U.S. 87, 95: "There might be force in this suggestion if the statute had left the meaning of its terms to the test of popular understanding. Instead, it has attempted to secure precision and certainty by rejecting a test so fluid and indeterminate and supplying its own glossary * * *. In such circumstances definition by the ordinary man or even by the ordinary dictionary with its studied enumeration of subtle shades of meaning is not a substitute for the definition set before us by the lawmakers with instructions to apply it to the exclusion of all others * * *. There would be little use in such a glossary if we were free in despite of it to choose a meaning for ourselves."

Under sections 2—27 and 11—15 of the School Code (Ill. Rev. Stat. 1949, chap. 122, pars. 2—27 and 11—15,) the Superintendent of Public Instruction is given power to set standards for the recognition of elementary and high schools. Pursuant to this power the conditions of recognition required by said Superintendent and the University of Illinois, among other things, provide: "Regulation 4— Certification. All Superintendents, principals, supervisory officers, and teachers employed in public high schools are required by statute to be properly certified." (The Recognition and Accrediting of Illinois Secondary Schools, issued October, 1940, page 32; also see Illinois School Board Journal, Sept.-Oct. 1941, page 103.) Section 21—1 of the School Code at the time this action arose provided that

"No one shall teach in the public schools * * * who does not hold a certificate of qualification * * *." (Ill. Rev. Stat. 1949, chap. 122, par. 21—1.) The interpretation of the school law by the Superintendent of Public Instruction to require superintendents to be certified under the laws relating to teachers is of long standing. Newton Bateman, former Superintendent of Public Instruction, so construed the school law in 1865, and such construction is noted in his book entitled "Common School Decisions," (Pillsbury revised edition, 1889,) page 200, which reads:

"4. Superintendents of City and Village Schools. It is held that the superintendent of city and village schools belongs to the teaching force, and should, therefore, have a certificate of qualification in order that he may draw his pay."

This court, in considering uniform and long continued construction placed upon the charter provisions of a railroad, relating to taxation by the State's public officials, in the case of *People* v. *Illinois Central Railroad Co.* 273 Ill. 220, at pages 242 and 243, held: "If it be assumed that the meaning that should be placed upon the charter provisions of appellant company here under consideration is doubtful, then the contemporaneous, uniform and long continued construction placed upon these charter provisions by public officials will have great weight with the court." Also see *Mississippi River Fuel Corp.* v. *Commerce Com.* 1 Ill.2d 509; and *Nye* v. *Foreman,* 215 Ill. 285. This court has not heretofore determined whether under the school law as it existed prior to 1951, superintendents were required to be certified. However, our conclusion cannot but be guided by the above decisions and by the words of Mr. Justice Cartwright in the case of *County of Cook* v. *Healy,* 222 Ill. 310, at page 317: "Where a particular construction has been given to a provision and it has been contiued for a long term of years and acquiesced in by the public at large, such construction is entitled to great weight

and may be equal in force to a judicial construction."

In 1951 section 21—1 of the School Code was amended to provide: "No one shall teach or supervise in the public schools * * * who does not hold a certificate of qualification * * *." (Ill. Rev. Stat. 1951, chap. 122, par. 21—1.) We recognize that this subsequent legislation does not afford proof of prior status of the law; but the force of the long continued administrative construction of the school law requiring the certification of superintendents and public acquiscence therein, coupled with the later statutory enactment in conformity thereto, leaves us with the inevitable conclusion that superintendents are, under present law, and were under prior law, "teachers" within the definition of the Teacher Tenure Law. Our decision in this respect finds support in other jurisdictions. (*State ex rel. Frank* v. *Meigs County Board of Education,* 140 Ohio St. 381, 44 N.E.2d 455; *School City of La Fayette* v. *Highley,* 213 Ind. 369, 12 N.E.2d 927; *Gallardo, Commissioner of Education* v. *Gonzales,* 143 F.2d 947.) Nothing said in *Eelkema* v. *Board of Education,* 215 Minn. 590, 11 N.W.2d 76, militates against this conclusion. The Minnesota court was there interpreting unlike statutory language in a different historical setting.

The defendant pleaded and argued the defense of *res judicata.* The record indicates that the prior action which abated in the Appellate Court was a *mandamus* proceeding wherein the board of education and Earl J. NcNely were parties. The present suit is an action in contract by the personal representative of the decedent and against the board of education wherein the plaintiff demands judgment in the sum of $5400. *Mandamus* is a summary, expeditious, and drastic common-law writ of an extraordinary character, sometimes referred to as the highest judicial writ known to law. (*People ex rel. Dolan* v. *Dusher,* 411 Ill. 535.) Generally, the doctrine of *res judicata* is that an existing final judgment rendered upon the merits, without

fraud or collusion, by a court of competent jurisdiction, is conclusive of the rights, questions, and facts in issue as to the parties and their privies in all other actions in the same or any other court of concurrent jurisdiction. The defendant has failed to prove the identity of the same issues in the actions in question and the burden of such proof was upon it. *City of Geneseo* v. *Illinois Northern Utilities Co.* 378 Ill. 506; *Charles E. Harding Co.* v. *Harding,* 352 Ill. 417.

The defendant has also asserted that this action, being in contract, cannot lie, because the decedent had no contract at the time of his dismissal. Section 24—2 of the School Code provides that: "Contractual continued service shall continue in effect the terms and provisions of the contract with the teacher during the last school term of the probationary period, subject to the provisions of this Act and the lawful regulations of the employing board." In view of this provision, we find no merit in this assertion.

The defendant has also argued that the plaintiff is barred from recovery because the decedent did not seek review of his dismissal by the board of education in accordance with the provisions of the Teacher Tenure Law. Section 24—3 of the School Code provides for the dismissal of tenure teachers for cause and for their dismissal due to the decision of the board to decrease the number of teachers or to discontinue some particular type of teaching service. If removal is for the latter reason 60-day notice prior to the end of the school term must be given the teacher along with a statement of honorable dismissal. If the dismissal is for cause, then the cause must be stated and the pertinent provisions of this section must be met relative to notice and hearing, and review of the decision of the board is under the Administrative Review Act, as provided for in section 24—8 of the School Code. Section 24—3 contains no provision for review under the Administrative Review Act of decisions of the board to dismiss teachers due to board determination to decrease the number

of teachers employed or to discontinue some particular type of teaching; this section, however, does provide for tender to such dismissed teachers of the position in question if it is reinstated within one year. Thus this contention of the defendant must likewise fail.

We conclude that the Appellate Court erred in reversing the judgment of the trial court and the Appellate Court judgment is accordingly reversed, and the judgment of the circuit court is affirmed.

*Appellate Court reversed; circuit court affirmed.*

Mr. Justice Klingbiel, dissenting:

I am compelled to express my objection to what seems to me a clear instance of judicial legislation in the guise of construction. The practice of shaping the meaning of words to accord with ideas of what the legislature should have said, instead of what it did say, must ultimately result in rendering statutory language of such unpredictable, vague import that no course of conduct can be safely undertaken without a prior judicial "interpretation." The function of language is to convey with as much precision as possible the particular thought or idea. When accepted definitions are judicially disregarded in favor of tortuous, far-fetched and unjustified constructions, this precision is destroyed, making it necessary for persons to guess what kind of interpretation a court might decide to put upon common, ordinary words. The particular litigation may be of limited significance, of course, but the delimitizing of meaning goes to the very foundations of the law.

Granting that the legislature is free, within reasonable limits, to define "teacher" without regard to its common meaning, what has it actually done here? It has said merely that a teacher is an employee who is required to be certified "under laws relating to the certification of teachers." When reference is made to the laws relating to the certification of teachers, in force when this litigation arose,

we discover the simple provision that no one shall "teach" who does not hold a certificate. By what rational process is it found that a certification provision which does not mention superintendents, amplifies a definition provision governing, in turn, the scope of the tenure provision, neither of which says anything at all about supervisory personnel?

The opinion points out that under sections applying to districts of a different class, superintendents are expressly included. But instead of applying the accepted rule in such cases, the court holds that the difference in language evidences an intended identity of meaning! If the legislature had intended to include superintendents or others having some administrative or supervisory duty, nothing would have been simpler than to have said so, as it did in preceding sections. Failure to do so shows an intention to exclude them.

The provision relied on here provided that no one shall "teach" who is not certified. By subsequent amendment, *not* applicable here, its scope was expanded to provide that no one shall "teach or supervise" who is not certified. Here, again, by a novel doctrine of interpretation, the difference in language is held evidence of identity of content. If no change was intended, why the amendment? If teaching is supervising, why specify both in the disjunctive? If a supervisor is a teacher, and if supervising is teaching, the words "or supervise," as contained in the later amendment, must be pure surplusage. If a superintendent is a teacher, whom does he teach? What subjects does he teach? Section 7-11 makes the superintendent the executive officer of the board, and assigns him the duty to carry out its administrative and executive functions. He is an administrator, not a teacher. In the case at bar the evidence is undisputed that decedent did no teaching, and that his services were solely administrative in character. In the absence of specific statutory direction, supervisory and administrative officers of a school district should not, by a

process of judicial construction, be brought within the coverage of provisions in terms applicable only to teachers. Both in law and in practice such positions constitute a class distinct from that of a teacher. As the Minnesota court observed in *Eelkema* v. *Board of Education,* 215 Minn. 590, 11 N.W.2d 76, "The character of the services of a superintendent of schools to the district and of his relations to the board is such that it should require a clear declaration of legislative intent to bring him within the continuous employment effected by the tenure act."

Other statutory provisions referred to in defendant's brief indicate that the legislature was aware of the distinction between the two types of activity, and that it would have included express provisions had it intended the term "teacher" to refer as well to a supervisor. The Teacher Tenure Law created a new liability on the part of school boards. In such cases the courts will not extend or enlarge the liability by construction, nor will they go beyond the clearly expressed provisions of the statute. (*Anderson* v. *Board of Education,* 390 Ill. 412.) In that case we pointed out that "The Teacher Tenure Law clearly creates a new liability where none would otherwise exist; it makes a contract for the parties by operation of the law, where otherwise none would exist." By a well-reasoned opinion the Appellate Court for the First District, in *Biehn* v. *Tess,* 340 Il. App. 140, concluded that the principal of a high school district is not a "teacher," within the meaning of the Teacher Tenure Law, and I think a similar result is required here. A court cannot properly read into a statute abnormal definitions that are not found therein either by express inclusion or by fair implication (See *Anderson* v. *Board of Education,* 390 Ill. 412, 425) ; nor can interpretations contained in administrative announcements or school board journals take the place of legislation.

The legislature may wish at some future time to bring superintendents within the application of tenure provisions.

But, on the other hand, there are reasons why it may not wish to do so. As representatives of the people, the board of education is the body charged with the primary responsibility in formulating educational policy and supervising school administration. In order for the board to discharge these responsibilities and be responsive to the wishes of the electorate, it would seem essential that they have the right to choose, in their discretion, the district's chief executive officer. Otherwise, the board would have duties but lack the necessary means of fulfilling them.

If the decision were predicated upon the estoppel contention I should have refrained from expressing my views. But to base it on the present distortion of terminology has consequences which I feel can only aggravate whatever confusion and uncertainty now exist in the law.

I would affirm the judgment of the Appellate Court.

Mr. JUSTICE HERSHEY concurs in the foregoing dissenting opinion.