MELVIN RICHTER, Highway Commissioner, Plaintiff-Appellee, *v.*
COLLINSVILLE TOWNSHIP *et al.*, Defendants-Appellants.

Fifth District    No. 80-249

Opinion filed July 1, 1981.

Frank R. Hudak, of Collinsville, for appellants.

Robert W. Cadagan, of Cadagan, Cain & Tognarelli, of Collinsville, for appellee.

Mr. PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

This case involves a complaint for a writ of *mandamus* to compel defendants, Collinsville Township and Viola Tucker, treasurer of the town fund of Collinsville Township, to transfer $40,000 from the town fund to the general road and bridge fund of Collinsville Township. The complaint is predicated upon a resolution which was adopted by the voters of Collinsville Township present at the annual town meeting conducted on April 10, 1979. The resolution states:

"I [*Melvin Koenig*], a registered voter of the Township of Collinsville submit the following resolution to the voters at the annual Town Meeting held on April 10, 1979.

Be it resolved that whereas the estimated amounts for the proper and necessary charges and expenses from the Town Fund of Collinsville Township for the fiscal year commencing April 1, 1979, shall total approximately $131,460.00 and whereas the estimated total receipts collected in the Town Fund total approximately $219,000.00 and whereas there exists a surplus in said Town Fund;

NOW THEREFORE, it is proposed that $40,000.00 of said surplus existing in the Town Fund be designated as surplus funds and said surplus funds be transferred to and paid into the General Road Fund to be used by the Highway Commissioner of Collinsville Township for improving and maintaining the roads of said Township."

As of December 21, 1979, no funds had been transferred from the town fund to the general road and bridge fund pursuant to the resolution. On this date, Melvin Richter, highway commissioner of the road district

located in Collinsville Township, filed a complaint seeking a writ of *mandamus* to compel the defendant township to transfer $40,000 in accordance with the resolution. The township counterclaimed on January 30, 1980, alleging that the statute authorizing the transfer of surplus funds was of no force and effect and that the transfer resolution consequently would be of no force and effect. An amended complaint was filed February 29, 1980, naming Viola Tucker as an additional defendant.

Defendants filed a motion for summary judgment on March 27, 1980, contending that no genuine issue existed as to any material fact and that the complaint was barred by laches. The motion was denied and the cause came to trial on April 29, 1980. Following a bench trial, judgment was entered in favor of plaintiff and an order was entered allowing the writs of *mandamus* to issue. Neither the report of proceedings nor the judgment order indicates that the trial court made any special or separate findings of fact on the issues raised in the counterclaim.

Defendants raise the following issues on appeal: (1) whether the trial court erred in ruling that plaintiff's cause of action was not barred by laches; (2) whether the trial court erred in denying the motion for summary judgment; (3) whether a surplus existed in the town fund on April 10, 1979, so that the $40,000 could have been transferred to the road and bridge fund; and (4) whether the trial court erred in ordering the writ of *mandamus* to issue against defendants.

■■ Prior to considering the issues raised by defendants, we address plaintiff's contention that this appeal should be dismissed because all issues have been rendered moot. Based upon affidavits submitted to this court on appeal, plaintiff asserts that the town board of trustees passed a resolution on May 27, 1980, directing the transfer of $40,000 from the town fund to the general road and bridge fund; that the actual transfer occurred on June 4, 1980; and that plaintiff accepted the funds and a portion of them have been expended for road purposes. Plaintiff concludes that this transfer rendered moot the underlying question of whether a writ of *mandamus* should issue.

The board's resolution provides in part:

"WHEREAS, by Orders of Associate Judge P. J. O'Neill, a Writ of Mandamus has been issued to compel Town Treasurer Viola Tucker to pay $40,000.00 in town funds to Highway Commissioner Melvin 'Butts' Richter by June 9, 1980;

WHEREAS, Town Treasurer Viola Tucker will therefore pay $40,000.00 in town funds to the highway commissioner;

❄ ❄ ❄

NOW, THEREFORE, IT IS HEREBY RESOLVED that Frank B. Hudak, Attorney for the Town of Collinsville be, and hereby is, authorized to appeal and to take all necessary and proper action

required to prosecute an appeal * * * of the Orders entered by Associate Judge P. J. O'Neill * * *."

The enacting clause of this resolution merely authorizes the retention of counsel to prosecute the instant appeal; it does not call for the transfer of any money to the general road and bridge fund. The only reference to such a transfer is in the preamble wherein it is acknowledged that Viola Tucker is under court order to transfer the money and that she will comply with the wishes of the court. On the basis of this resolution, the board cannot be said to have ordered the transfer.

Furthermore, it is well settled that payment of a money judgment does not destroy a judgment debtor's right to appeal. (*First National Bank v. Road District No. 8* (1945), 389 Ill. 156, 58 N.E.2d 884; *Pinkstaff v. Pennsylvania R.R. Co.* (1964), 31 Ill. 2d 518, 202 N.E.2d 512; *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 226 N.E.2d 624; *Alexander Lumber Co. v. Busboom* (1970), 122 Ill. App. 2d 342, 259 N.E.2d 76.) Consequently, had the funds been transferred pursuant to the resolution of the township board of trustees after the judgment had been rendered, Viola Tucker would have been acting in the capacity of a judgment debtor; and this transaction would not operate as a forfeiture of defendants' right to appeal.

Defendants first contend that the trial court erred in ruling that the complaint was not barred by laches. Defendants assert that if the transfer resolution were valid, they would be liable as of April 10, 1979, the date of the resolution's passage. Failure to transfer the funds on this date therefore would constitute the act upon which plaintiff's cause of action was predicated. The original complaint was not filed until December 21, 1979, some eight months later.

Defendants claim that as a consequence the complaint is untimely because a *mandamus* action must be brought within six months of the act giving rise to the cause of action.

■■ As defendants correctly note, a complaint for *mandamus* must be brought within six months, unless there is a reasonable explanation for further delay. (*People ex rel. Fleming v. Conlisk* (1973), 11 Ill. App. 3d 520, 299 N.E.2d 537; *Murphy v. Rochford* (1977), 55 Ill. App. 3d 695, 371 N.E.2d 260.) Passage of time by itself does not bar relief; and if a defendant does not establish that he has been materially prejudiced by the delay, the plaintiff is not guilty of laches. (*People ex rel. Casey v. Health & Hospitals Governing Com.* (1977), 69 Ill. 2d 108, 370 N.E.2d 499; *Murphy v. Rochford.*) Facts constituting laches depend on the particular circumstances of each case. The determination of the existence of the defense of laches is left to the sound discretion of the trial court, and its decision ought not to be overturned unless there is a clear showing of an

abuse of discretion. *Bobin v. Tauber* (1976), 45 Ill. App. 3d 831, 360 N.E.2d 368; *People ex rel. Fleming v. Conlisk.*

■■ In the instant case, the trial court found that plaintiff's cause of action accrued on September 25, 1979, thereby rendering the complaint timely. Our examination of the record leads us to conclude that this finding is supported by the manifest weight of the evidence and was not an abuse of discretion. The record reflects that whatever delay was occasioned in bringing this action was invited by defendants by requesting that plaintiff forestall any action pending the township's receipt of tax revenue and Federal revenue sharing funds. Plaintiff gave the following testimony concerning these requests:

"Q. Had you on occasion from April the 10th until September 25th had conversation with Mrs. Tucker and with various members of the board?

A. Many times.

Q. And what was the gist of these conversations regarding this money?

A. They would have to wait to see how much money they would get in, tax money.

Q. When does the tax money come in?

A. August, September.

Q. And that was the reason, waiting to see exactly how much money they would have?

A. Correct.

* * *

Q. During this period, you were never told that you would not be getting the money—

A. No, sir.

Q. —because it was illegal?

A. No, sir.

Q. You were told that they had to wait to see how much money they had?

A. Yes, sir."

Introduced at trial and attached to plaintiff's affidavit in opposition to the motion for summary judgment is a letter dated September 25, 1979, written by defendants' attorney recommending that the transfer of funds should not be implemented in accordance with the transfer resolution. Viola Tucker discussed this letter while testifying as a witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 60):

"Q. Now, Mrs. Tucker, the Board of Trustees of which you are the Supervisor advised Mr. Richter on September 25th of 1979 you were not going to transfer the funds, any funds?

A. That's correct."

Town clerk Terry "Bones" Allan corroborated this testimony by stating that this letter was plaintiff's first notification that no transfer would be forthcoming.

Under these facts we believe it was reasonable for plaintiff to delay legal action at least until September 25, 1979. Since the complaint was filed well within six months of this date, laches is not a bar to this cause of action.

Defendants next contend that the trial court erred in denying the motion for summary judgment. Defendants urge that the transfer resolution is defective because it did not comply with the statutory requirement that it specify the estimated amount of all the charges and expenses to be deducted from the town fund until the time of the receipt of revenue after the next annual town meeting. (Ill. Rev. Stat. 1979, ch. 139, par. 164.) Defendants further assert that they cannot be compelled by a writ of *mandamus* to transfer a surplus of town funds which does not exist.

In an affidavit attached to the motion for summary judgment, Mrs. Tucker avers that the balance of the town fund on April 10, 1979, after the payment of all necessary and proper town expenses was $38,032.71; that by July 14, 1979, the balance was reduced to $14,676.42; and that on the last day of the fiscal year, March 31, 1980, the balance was $60,820.55. Also attached to the motion is a copy of the transfer resolution and a copy of the appropriation ordinance prepared by the township board of trustees for the fiscal year commencing April 1, 1979. Plaintiff does not contest these figures; however, his affidavit filed in opposition to the motion states that a surplus existed in the town fund for the fiscal year ending March 31, 1980, which exceeded the $40,000 ordered transferred to the general road and bridge fund by the transfer resolution. Specific figures are not included in the affidavit to indicte how plaintiff arrived at this conclusion. Since Mrs. Tucker's figures are unchallenged, they must be accepted as being correct for purposes of ruling on the motion for summary judgment. *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.

■■ Although the accuracy of the figures in the resolution declaring the surplus is not in issue, we are asked to determine whether a surplus existed in the town fund, as defined by section 1 of "An Act to authorize transfer of surplus town funds to other town funds or road and bridge funds" (Ill. Rev. Stat. 1979, ch. 139, par. 164). This determination does not involve a finding of fact; consequently, summary judgment is an appropriate vehicle by which to resolve the controversy. *Deizman v. Board of Education* (1977), 53 Ill. App. 3d 1050, 369 N.E.2d 257; *Manda v. Branham* (1977), 50 Ill. App. 3d 91, 365 N.E.2d 216.

Section 1 of the Act states in part:

"The legal voters of any town at any annual town meeting or at a special town meeting * * * may * * * transfer from one or more town funds to other or different town fund or funds, or to the general road and bridge fund, * * * the surplus of any fund or funds over and above an amount necessary to meet town charges and expenses of such town until the time of receiving revenue levied at the next annual town meeting, * * * [p]rovided, that any resolution, adopted * * * shall specify the estimated amount of the aforesaid proper and necessary charges and expenses of such town against said fund or funds, until the time of the receipt of revenue after the next annual town meeting, and the particular amount of surplus of such town fund or funds to be paid over as aforesaid, * * *." Ill. Rev. Stat. 1979, ch. 139, par. 164.

Defendants claim that the resolution purporting to transfer the funds did not specify all of the necessary and proper expenses of the town because it included only the charges and expenses of the town for the current fiscal year. Defendants assert that before a surplus could be determined under the statute, the transfer resolution additionally must specify the charges and expenses of the town for the succeeding fiscal year until the first receipt of town tax revenues. Under this theory, the transfer resolution did not comply with section 1 because it limited the period for computing a surplus to the current fiscal year.

■■ We are unaware of any authority defining the manner in which a surplus of town funds is to be computed under the Act. The primary consideration of statutory construction is to give effect to the legislature's intent. In defining legislative intent, courts should first look to the language of the statute. (*People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 357 N.E.2d 1180.) Unless otherwise defined, words which appear in a statute are intended to have their ordinary and popular meaning. (*Winks v. Board of Education* (1979), 78 Ill. 2d 128, 398 N.E.2d 823; *Franzese v. Trinko* (1977), 66 Ill. 2d 136, 361 N.E.2d 585.) Additional aids in ascertaining legislative intent are such factors as the reason for the enactment, contemporaneous conditions, existing circumstances, and the remedy sought. *Application of County Collector v. Edelen* (1978), 66 Ill. App. 3d 437, 383 N.E.2d 1224; *Illinois National Bank v. Chegin* (1966), 35 Ill. 2d 375, 220 N.E.2d 226.

■■ In applying these principles of statutory construction to the instant case, the legislative intent manifested by section 1 of the Act is to permit and facilitate the transfer of uncommitted town monies from one town fund to another only if such transfer does not disrupt vital town business or services. The section provides a method for determining the amount of uncommitted or surplus funds. It requires that the transfer resolution

specify all charges and expenses to be deducted from the town fund out of which the transfer funds are to be drawn from the time the transfer resolution is adopted until the receipt of revenue after the next annual town meeting. Thus, as in the present case, where the transfer resolution is adopted at an annual town meeting, as opposed to a special town meeting, the period of accounting for charges and expenses would necessarily exceed one year. When this section was originally enacted in 1917, the voters of the town were required to meet on the first Tuesday of April of each year for the transaction of town business. (Ill. Rev. Stat. 1917, ch. 139, par. 40(3).) A delay resulted from the time taxes were levied until the tax revenues were received later in the fiscal year. To sustain the town pending the receipt of this revenue, the town was able to resort to the monies remaining in the town fund which were received in the prior fiscal year. Thus, a town fund would be used to cover not only the charges and expenses incurred during the current fiscal year but also those charges and expenses incurred during a part of the next fiscal year before tax revenues were actually received. Section 1 recognizes this unique cash-flow demand upon a town fund by requiring that the charges and expenses of the interim period of the next fiscal year before the next taxes are received be considered in the transfer resolution before a surplus legally could be declared. By an enactment effective July 10, 1970, the legislature divested the voters at the annual township meeting of the power to levy taxes (Ill. Rev. Stat. 1979, ch. 139, par. 39.03 (repealed by 1973 Ill. Laws 925-26)) and eventually conferred such authority upon the township board of trustees (Ill. Rev. Stat. 1979, ch. 139, par. 126.3). This divestiture of the voters' taxing power at their town meeting does not purport to alter such voters' authority to transfer funds as specified in section 1 of the act authorizing the transfer of certain funds. (Ill. Rev. Stat. 1979, ch. 139, par. 164.) Moreover, a delay will still arise between the time the township board of trustees levys taxes and the township receives the tax revenue.

In view of the legislative intent expressed in the enactment of section 1 of the act governing the transfer of certain funds, we find that the transfer resolution relied upon by plaintiff failed to establish the existence of surplus town funds. All the charges and expenses to be borne by the town fund from the date of the adoption of the resolution on April 10, 1979, until the receipt of revenues after the next annual town meeting in April of 1980 were not specified in the resolution. The resolution omitted all the charges and expenses to be incurred after the April 1980 town meeting and until the receipt of town tax revenues later that year. This omission is fatal, and the resolution is without force or effect. Therefore, the trial court erred in denying the motion for summary judgment.

Since summary judgment should be granted in favor of defendants, we need not discuss the other issues raised in this appeal.

The judgment of the circuit court of Madison County causing the writ of *mandamus* to issue is hereby reversed, and judgment is entered in favor of defendants and against plaintiff.

Reversed.

JONES and KARNS, JJ., concur.