HELEN RICHTER, Collinsville Township Highway Commissioner, Plaintiff-Appellee, v. COLLINSVILLE TOWNSHIP *et al.*, Defendants-Appellants.

Fifth District   No. 5—86—0130

Opinion filed February 3, 1987.—Rehearing denied February 27, 1987.

Frank R. Hudak, of Collinsville, for appellants.

Robert W. Cadagin, of Cadagin & Cain, of Collinsville, for appellee.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

This appeal involves a continuation of the dispute considered by this court in *Richter v. Collinsville Township* (1981), 97 Ill. App. 3d 801, 423 N.E.2d 549. In that cause we held that the resolution adopted by the voters at the annual town meeting on April 10, 1979, authorizing the transfer of $40,000 in town funds to the general road and bridge fund of Collinsville Township, did not comply with "An Act authorizing transfer of surplus town funds to other town funds or road and bridge funds" (Act) (Ill. Rev. Stat. 1979, ch. 139, par. 164) because the resolution did not specify the estimated amount of charges and expenses to be deducted from the town fund until the time of receipt of revenues after the next annual town meeting. We noted that the period of time involved necessarily exceeds one year, but the resolution adopted did not account for all the charges and expenses of the town fund until the receipt of revenues after the next annual town meeting in April of 1980 so that it could not be determined if the transfer would disrupt vital town services.

Following our decision, new resolutions were adopted in an effort to comply with our decision. At a special town meeting held on September 14, 1981, a resolution was adopted by the voters present authorizing the transfer of $40,000 from the town fund to the general road fund. The transfer was not made. At the annual town meeting on April 13, 1982, a resolution was adopted authorizing the transfer of $60,000 to the general road fund. Included in the $60,000 was the $40,000 previously authorized but not transferred. When the town trustees, by a vote of three to two, refused to make this transfer, this action for mandamus was instituted by the highway commissioner. The trial court held in her favor, and this appeal followed.

The two resolutions are essentially identical in form. The resolution adopted at the annual town meeting held on April 18, 1982, provided that for the fiscal year beginning April 1, 1981, there was $58,492.27 cash on hand in the town fund and after receipt of all

revenues and the payment of all town charges and expenses, the town fund had a cash balance of $144,919.97 at the end of the fiscal year on March 31, 1982.

The resolution estimated receipts of $227,400 for the fiscal year beginning April 1, 1982, and ending March 31, 1983, from all sources, including taxes and Federal revenue sharing, and for the period April 1, 1983, through September 30, 1983, the sum of $52,000. The total cash on hand and estimated receipts for the entire period of April 1, 1982, through September 30, 1983, was $424,300. The resolution noted that the time for receiving revenues after the next annual town meeting would be October 1, 1983, thus attempting to correct the shortcoming of the resolution we found deficient in *Richter v. Collinsville Township* (1981), 97 Ill. App. 3d 801, 423 N.E.2d 549.

The resolution further estimated expenditures for the period April 1, 1982, through September 30, 1983, the time of receiving tax receipts levied for the 1982 fiscal year, to be $306,000 and finding a surplus to exist presently and up to October 1, 1983, in excess of $100,000, authorized the transfer of $60,000 to the general road fund.

Section 1 of the Act (Ill. Rev. Stat. 1981, ch. 139, par. 164), adopted in 1917, provides:

> "The legal voters of any town at any annual town meeting or at a special town meeting *** may *** transfer from one or more town funds to other or different town fund or funds, or to the general road and bridge fund, *** the surplus of any fund or funds over and above an amount necessary to meet town charges and expenses of such town until the time of receiving revenue levied at the next annual town meeting, *** [p]rovided, that any resolution, adopted *** shall specify the estimated amount of the aforesaid proper and necessary charges and expenses of such town against said fund or funds, until the time of the receipt of revenue after the next annual town meeting, and the particular amount of surplus of such town fund or funds to be paid over as aforesaid ***."

The evidence at trial was that cash on hand in the town fund from the period September 24, 1981, until the date of trial, April 1985, was never less than $92,000 and frequently exceeded $200,000.

The township argues the resolutions do not satisfy the requirement of the Act that a surplus exists over the "amount necessary to meet town charges and expenses of such town *until the time of re-*

*ceiving revenue levied at the next* annual *town meeting."* (Emphasis added.) Because the voters no longer levy taxes at the annual town meeting (Ill Rev. Stat. 1981, ch. 139, par. 126.3), literal compliance with the Act is impossible. Furthermore, as the town clerk need not certify the amount of taxes to be raised for town purposes until September of the year (Ill. Rev. Stat. 1981, ch. 120, par. 638; Ill. Rev. Stat. 1981, ch. 139, par. 114), the next annual town meeting after the fiscal year April 1, 1982, to March 31, 1983, would be in April 1983 and the time for receiving revenues from taxes levied in 1983 would be in September 1984, not September 1983, a period of 29 months, not 18 months, as provided for in the resolution adopted at the annual town meeting on April 13, 1982.

While the literal wording of the Act could support the township's argument, and the special town meeting prior to the annual town meeting was undoubtedly called to comport with such a literal reading, this is an unreasonable construction of the Act which has remained in its present form since 1917. Taxes are no longer levied at the town meeting, but taxes are levied as a result of the budget-and-appropriation ordinance adopted by the trustees before the end of the first quarter of the fiscal year (Ill. Rev. Stat. 1981, ch. 85, par. 803) which necessarily includes the "moneys authorized to be raised by the vote of a town meeting for any town purposes" (Ill. Rev. Stat. 1981, ch. 139, par. 124) as well as all town charges, even though the function of the electors at the annual town meeting is now of limited significance. We find that the only reasonable construction of the statute is one that requires an accounting for an 18-month period from the beginning of the fiscal year in the year of the annual town meeting.

The township argues further that the Act does not allow the inclusion of estimated future receipts in determining whether surplus town funds are available for transfer. In other words, before a transfer is authorized, the amount on hand at the date of the town meeting must be sufficient "to meet town charges and expenses \*\*\* until the time of receiving revenue levied at the next annual town meeting," in determining whether a surplus exists. According to the township, the method employed by the highway commissioner only produces an estimated future balance of cash on hand and is neither authorized by statute nor sound accounting principles.

The method of determining surplus suggested by the township, however, while .ignoring estimated receipts, takes into account estimated expenses and charges, which, we acknowledge, is required by the Act. We do not believe that sound accounting principles

would support a method of accounting which only accounted for future expenses without accounting for tax monies which are certain to be received. Furthermore, without regard to receipts or expenses, according to the financial statements of the township, there was always a balance on hand in every month for the period of September 1981 through April 1985 sufficient to make the transfer of $60,000. The township has projected *pro forma* the transfer of the entire surplus on hand at the close of each fiscal year but these are only hypothetical figures that are not before us.

As the highway commissioner argues, to adopt the defendant's reasoning would render the Act a nullity as it is unlikely that a township would ever have sufficient funds on hand to defray the expenses and charges of the township for 18 months, or 27 months, without regard to tax receipts and still have a surplus available. Indeed, such a large balance of available funds would suggest an unreasonable accumulation of tax monies.

The funds available to defray the charges and expenses of a township necessarily include the funds on hand at the beginning of the fiscal year plus the taxes extended for the prior fiscal year which will not be receivable until September of the current fiscal year. In *Central Illinois Public Service Co. v. Miller* (1969), 42 Ill. 2d 542, 248 N.E.2d 89, this was approved as the proper method of accounting in determining excess accumulations. (See also *In re Application of O'Connor* (1980), 80 Ill. App. 3d 354, 399 N.E.2d 683.) Accounting for tax receipts, and revenue sharing funds where available, is also the proper method of accounting for funds available for transfer under the Act here in question. Municipal governments must always take into account funds to be received in future taxes when collected; so, as the township points out, each lax levy must "provide for sufficient revenue to fund the township until at least two years after the year of the levy." But as the cycle is repetitive, monies are always collectible from the last preceding levy so in reality only an 18-month period of time need be considered.

■ Defendant also argues that compliance with the Act is now impossible as there no longer exists a township road and bridge fund, as there did in 1917 when the Act was adopted, to which the transfer could be made. Section 3.03 of the Township Law of 1874 (Ill. Rev. Stat. 1969, ch. 139, par. 39.03) was repealed in 1970 (Pub. Act 76.5, eff. July 10, 1970). Construction and maintenance of roads are now under the jurisdiction of road districts under the Illinois Highway Code (Ill. Rev. Stat. 1981, ch. 121, par. 6–101 *et seq.*). However, while the manner of levying road district taxes may have

changed, the change, as far as application of the Act in question, is one of form and we consider this argument specious. The town supervisor and clerk are *ex officio* treasurer and clerk of a road district. In substance, maintenance of roads and bridges remains a town function. We see no difficulty in transferring the surplus to the highway commissioner's account, whether technically it is no longer a town fund, as provided for in section 6—206 of the Highway Code (Ill. Rev. Stat. 1985, ch. 121, par. 6—206).

Lastly, should the problem arise in the future, we consider the duty of the town clerk to call a special town meeting to be mandatory under the Act whenever a petition signed by 25 voters and the town supervisor is submitted to the town clerk. On February 23, 1982, a petition, signed by 42 voters and the town supervisor, was submitted to the town clerk requesting the call of a special town meeting prior to the annual town meeting to determine whether a surplus existed and if so transferring the surplus to the road fund. The clerk declined to call a special town meeting.

A special town meeting may be called by the submission of such a petition. When submitted, the only reasonable construction of the Act supports the plaintiff's position that the town clerk must then call such a special meeting. He has no discretion to refuse to call such a special meeting. However, we believe that the judgment awarding plaintiff $60,000 in damages against the township for the failure of the town clerk to call a special town meeting cannot be sustained on any theory and the judgment as to count V must be reversed. It would be purely speculative as to what action the voters would have taken with regard to transferring funds had a special town meeting been called.

The judgment of the circuit court of Madison County is affirmed except as to count V of the complaint.

Affirmed in part; reversed in part.

JONES and WELCH, JJ., concur.