GRACE JAMES *et al.*, Plaintiffs-Appellees, v. BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 189, East St. Louis, Illinois, Defendant-Appellant (Ressie Parram, Plaintiff).

Fifth District   No. 5—88—0435

Opinion filed January 18, 1990.

Edward J. Welch, of Welch & Bush, P.C., of East St. Louis, for appellant.

Jack Carey, of Belleville, for appellees.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:

The defendant, Board of Education, School District No. 189, East St. Louis, Illinois (hereinafter District No. 189), appeals the decision of the trial court ordering reinstatement of five of the six plaintiffs who brought this suit to the position of tenured teacher within District No. 189 and awarding damages to which the parties stipulated. These five plaintiffs, Grace James, Shirley Spranaitis, Myrna Smith, Ednar Avant, and Carlynn Helbig, are registered nurses who had taught in a practical nursing program paid for and operated by District No. 189. When each of the five was hired to teach in the program, she obtained a provisional vocational certificate. While each was employed as an instructor in the program, she completed further education and obtained a high school certificate. In 1983 the practical nursing program was eliminated for financial reasons, and each of the plaintiffs was honorably dismissed. At the time the program was eliminated each plaintiff had been teaching in it full time well over two consecutive school terms. When the plaintiffs were not recalled to teach, they brought this suit, contending that they were tenured

members of District No. 189 who had more seniority than some other persons who were recalled. The defendant presents two issues for review: (1) whether an individual who holds a provisional vocational certificate acquires tenure after two years of service with a school district where such individual never served as a probationary teacher in grades K through 12 and did not hold a regular teacher's certificate until periods of time ranging from four years until the year in which the adult education program was discontinued and (2) whether back pay should be awarded to teachers who delayed in bringing a lawsuit to resolve their status as tenured teachers.

On November 14, 1984, the plaintiffs filed their complaint, each seeking reinstatement, in a count for *mandamus*, to the position of tenured teacher and damages for lost wages for the 1983-84 academic year until the date of reinstatement. In its answer the defendant raised an affirmative defense of *laches*, based on the period of 19 months between the time in April of 1983 when the plaintiffs received notice of their honorable dismissal and the time they brought suit.

The facts are largely undisputed. At a bench trial the plaintiffs testified in relevant part as follows. Shirley Spranaitis stated that she was employed by the defendant for 19 years from February of 1964 until approximately September of 1983. She has a bachelor's degree in nursing and a master's degree in education, specializing in guidance. She is a certified teacher in Illinois for grades 6 through 12, having received her certification on August 11, 1980. She stated that her certificate permits her to teach health and science at the junior high level. Like the other plaintiffs, prior to receiving that certificate, she was employed by the defendant under a provisional vocational certificate. In "the late 60's" while employed by the defendant she taught high school seniors "health occupations" for one year. During that year she did not teach in the practical nursing program. Students in the practical nursing program were about 30 years of age and were required to have a high school diploma or a GED, that is, an equivalency diploma. The students who completed the program successfully received a diploma signed by the superintendent of schools. Instructors in the program had "lesson plans, syllabus, course of study, curriculum," evaluated the students' performance, and assigned grades. She was not, she said, required to perform hall, playground, or cafeteria duty, stating that the students in this program did not require such monitoring.

Grace James testified that she began to work for the defendant in approximately December of 1970 or January of 1971. She was

hired to teach in the practical nursing program. Her first assignment, however, was to teach "health occupations," apparently to high school students. In June of 1971 she began to teach in the practical nursing program, where she taught until her dismissal in 1983. She received a bachelor's degree in education in 1979 and a master of science degree in education in 1985. She received her teacher's certificate on March 3, 1982, for grades 6 through 12. She stated that although she had completed all the requirements for the certificate in 1979, she had not applied for it until about three years later; she got the certificate, she said, because by that time there was talk that the practical nursing program might be discontinued.

Ednar Avant was hired by the defendant in February of 1968. In August of 1983 she received her teaching certificate, allowing her to teach science, for grades 6 through 12. She testified that she taught junior and senior high school students "health occupations" from 1969 to 1971.

Carlynn Helbig testified that she worked for the defendant from 1955 to 1956 and again from 1964 to 1972, when she left for four months. She was rehired in 1972 and worked until June 30, 1983. She got her teaching certificate in 1979 for grades 6 through 12 in the areas of health education and social studies. In 1970 she taught practical nursing to high school students.

Myrna Smith was first employed by the defendant in July of 1971 as a practical nursing instructor. She testified that in order to teach in that capacity "under the law you had to be certified within a given period of time, and within that period of time I did have [a] provisional vocational teaching certificate." In 1979 she received her teaching certificate for grades 6 through 12. Since January of 1986 she had been teaching seventh-grade science for the defendant.

Ressie Parram testified that she was hired by the defendant in September of 1970 as an instructor in the practical nursing program. She had a provisional vocational certificate until 1983 but, unlike the other plaintiffs, never obtained any other kind of certificate.

The plaintiffs were paid out of the accounts of District No. 189. Defendant's counsel explained to the trial court that initially the plaintiffs were paid according to a "vocational scale," but "when they got their degrees they were switched to the degree scale, and they remained on the degree scale until they stopped working." He added that the file of each plaintiff

"would reflect that the teachers, while they were in the LPN practice, as non-degree people, they were put on a vocational scale. After they got degrees pursuant to negotiations between

Local 1220 and the superintendent, Mr. Ducksworth, the evidence will be that the district agreed that they would be paid just as other degree people on that particular scale. That's the way they were paid. That's our testimony."

Testifying for the defendant, Leroy Ducksworth, the superintendent of schools of District No. 189, stated that the practical nursing program in which the plaintiffs served as instructors came under the direct supervision of the State Department of Registration and Education. Each student participating in the program was charged $150, a figure that was later increased to $300. The witness described the common school fund as that fund

"embrac[ing] the education of children ordinarily from 6 to 16. In the case of special education, children from 3 to 21. It is also a fund derived partially from the attendance, what we call ADA, average daily attendance, based on the number of pupils attending school."

The students in the practical nursing program were not, he said, counted in the daily attendance figure to fund the schools. The defendant stipulated that the plaintiffs were in the collective bargaining unit represented by District No. 189. The witness explained why the plaintiffs began to be paid according to their educational achievements as opposed to a "vocational instructor's schedule":

"Well, I think it more or less was a board prerogative. Vocational teachers came into the system on the basis of their experiential background and some education. But under the law they're required once they're hired under provisional vocational certificate to continue their school. So with that provision, and because the contract simply provided for it, the Board of Education paid or reimbursed teachers for tuition, and also when vocational teachers reached degree status, they put them on degreed salaries."

In addition to the six plaintiffs, about 60 to 70 teachers from grades 1 through 12, some of whom were not tenured, received notice in April of 1983 of their dismissal pursuant to a reduction in force occasioned by adverse financial circumstances. Many, if not all, of those who taught grades 1 through 12 were, however, recalled for the 1983-84 academic year, whereas none of the plaintiffs were. The witness testified that there were no vacancies that any of the plaintiffs could have filled without the need to "bump" six other teachers who were, in fact, recalled. He stated that in April of 1985 District No. 189 had four positions open for four of the six plaintiffs.

In its judgment the trial court noted that section 24—12 of the

School Code (Ill. Rev. Stat. 1983, ch. 122, par. 24—12), pertaining to the removal or dismissal of teachers in contractual continued service, "does not distinguish a common school system from another program funded by the District." The court stated further that while it was

"not unsympathetic to the dilemma faced by the Defendant at the conclusion of the 1983 academic year, it is evident that all of the Plaintiffs had been employed full-time by the Defendant for more than two consecutive terms and thus obtained the status of contractual continued service, which is also known as tenure. Moreover, five were certified by the State of Illinois through the Regional Superintendent of Schools as qualified to teach within School District 189. The exception to this certification requirement was the Plaintiff, Ressie Parram. Although Ms. Parram has a Bachelor of Arts Degree, she maintained only a provisional nursing certificate."

Section 24—12 provides in part that "[i]f the board has any vacancies for the following school term or within one calendar year from the beginning of the following school term, the positions thereby becoming available shall be tendered to the teachers so removed or dismissed so far as they are legally qualified to hold such positions." (Ill. Rev. Stat. 1983, ch. 122, par. 24—12.) The court held that all six plaintiffs had attained the status of contractual continued service, that is, tenure. It held further that, although Ressie Parram had tenure, she was not certified to teach, having maintained only a provisional vocational certificate. As we have said, the court ordered the other five plaintiffs reinstated to the position of tenured teacher within District No. 189 and awarded damages that were subsequently modified in a later order of the court according to the stipulation and agreement of the parties. The court denied the defendant's affirmative defense of *laches*, pointing out that the defendant had introduced no evidence to suggest it had been materially prejudiced by the passage of time.

With respect to the first issue presented for review, whether the plaintiffs had attained the status of tenure, the defendant contends that teachers do not acquire tenure unless they serve a two-year probationary period as a teacher after receiving their "teacher's certificate." In its brief defendant states that "[i]n order to be hired and serve as an instruction [*sic*] in the LPN Program, each of the plaintiffs was required to hold a 'provisional vocational certificate,' and none was required to hold a regular teacher's certificate." Defendant argues that the plaintiffs never performed as teachers in the common school fund, were never observed to determine whether they could

prove themselves as teachers in the common school fund, and therefore did not enter into contractual continued service. Defendant urges that in order to enter upon contractual continued service a teacher must have taught for two consecutive school terms in grades K through 12.

Section 24—11 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 24—11) provides that

"[a]ny teacher who has been employed in any district as a full-time teacher for a probationary period of 2 consecutive school terms shall enter upon contractual continued service unless given written notice of dismissal stating the specific reason therefor, by registered mail by the employing board at least 60 days before the end of such period."

Section 24—11 defines "teacher" as follows:

"As used in this and the succeeding Sections of this Article, 'teacher' means any or all school district employees regularly required to be certified under laws relating to the certification of teachers ***." Ill. Rev. Stat. 1983, ch. 122, par. 24—11.

■■■ It is for the legislature, not the court or the school board, to determine the basis upon which tenure may be granted (*Evans v. Benjamin School District No. 25* (1985), 134 Ill. App. 3d 875, 480 N.E.2d 1380) and to determine who should be embraced within the scope of the purpose of the law relating to teacher tenure (*McNely v. Board of Education* (1956), 9 Ill. 2d 143, 137 N.E.2d 63). The court must follow the statute according to its terms. (*Strejcek v. Board of Education* (1979), 78 Ill. App. 3d 400, 397 N.E.2d 448.) To gain tenured status the School Code requires that a teacher must first complete two consecutive yearly school terms as a full-time teacher without receiving a notice of dismissal. (*Verdeyen v. Board of Education* (1986), 150 Ill. App. 3d 915, 501 N.E.2d 937; *Evans v. Benjamin School District No. 25* (1985), 134 Ill. App. 3d 875, 480 N.E.2d 1380.) By its plain language section 24—11 defines a "teacher" as any school employee regularly required to be certified under laws pertaining to the certification of teachers. It was the policy of the legislature to include within the law pertaining to tenure only those employees required to be certified. *McNely v. Board of Education* (1956), 9 Ill. 2d 143, 137 N.E.2d 63.

■ The record in the instant case and the statement of the defendant in its brief indicate that none of the plaintiffs could have served as instructors in the practical nursing program operated by District No. 189 without holding, as each did, a provisional vocational certificate, pursuant to section 21—10(C)(1) of the School Code (Ill.

Rev. Stat. 1983, ch. 122, par. 21—10(C)(1)). Section 21—1 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 21—1), pertaining to the certification of teachers, provides in relevant part that

> "[n]o one may teach or supervise in the public schools nor receive for teaching or supervising any part of any public school fund, who does not hold a certificate of qualification granted by the State Board of Education or by the State Teacher Certification Board and a regional superintendent of schools as hereinafter provided ***."

Section 1—3 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 1—3) provides that "[t]he terms 'common schools', 'free schools' and 'public schools' are used interchangeably to apply to any school operated by authority of this Act," which is known, pursuant to section 1—1 (Ill. Rev. Stat. 1983, ch. 122, par. 1—1), as the School Code. In the instant case District No. 189 is operated by the authority of the School Code, and District No. 189, in its own words as stated in its brief, in turn, "operated" the practical nursing program in question, employed the plaintiffs to teach as instructors therein, and paid the plaintiffs, as its employees, out of its own accounts. Thus, we conclude that the plaintiffs were required to hold a certificate of qualification to teach in the practical nursing program operated by the defendant.

We note that the plaintiffs here differ from the plaintiff in *Kuykendall v. Board of Education* (1982), 111 Ill. App. 3d 809, 444 N.E.2d 766, who had served as a business education teacher in an adult training program wholly federally funded under Title I of the Comprehensive Employment and Training Act of 1973 (CETA) (29 U.S.C. §801 *et seq.* (1976)). In *Kuykendall* the defendant had paid the plaintiff's salary and benefits but had been reimbursed by the Federal government. No such reimbursement occurred in the instant case. The court in *Kuykendall* held that, when a school district employee teaches in a wholly federally funded program, such employment cannot be considered part of a probationary year.

■ The School Code required that the instant plaintiffs hold a certificate of qualification in order to teach in the program operated by District No. 189, and the plaintiffs did so. The plaintiffs were employed full time in District No. 189 for a probationary period of two consecutive years, without receiving a notice of dismissal, as teachers, that is, as employees regularly required to be certified under laws pertaining to the certification of teachers. Inasmuch as the plaintiffs meet the statutory requirements set forth by the legislature in section 24—11 pertaining to entry upon contractual continued ser-

vice, we hold that they had entered upon contractual continued service and had, thus, acquired tenure prior to the defendant's serving them with notice of their honorable dismissal.

With regard to the other issue raised on appeal by the defendant, concerning the doctrine of *laches*, the record shows that immediately upon receiving notice of their honorable dismissal, the plaintiffs attempted to secure places for themselves in the employ of the defendant during the upcoming school year. Through the East St. Louis Federation of Teachers, Local 1220, they sought to file a grievance upon the failure of District No. 189 to rehire them. Following various unsuccessful efforts to resolve the matter to the satisfaction of the plaintiffs, they brought suit. Passage of time by itself does not bar relief in the bringing of a complaint for *mandamus*, and if a defendant does not establish that he has been materially prejudiced by the delay, the plaintiff is not guilty of *laches*. (*Richter v. Collinsville Township* (1981), 97 Ill. App. 3d 801, 423 N.E.2d 549.) Facts constituting *laches* depend on the particular circumstances of each case. (*Richter v. Collinsville Township* (1981), 97 Ill. App. 3d 801, 423 N.E.2d 549.) The determination of the existence of the defense of *laches* is left to the sound discretion of the trial court, and its decision ought not to be overturned unless there is a clear showing of an abuse of discretion. (*Richter*, 97 Ill. App. 3d 801, 423 N.E.2d 549.) Here, the record does not suggest that the defendant was materially prejudiced by any delay by plaintiffs in filing suit. Nor does it show that the trial court abused its discretion in denying the defense of *laches*. Hence, we may not disturb its decision in this regard.

Affirmed.

RARICK and CHAPMAN, JJ., concur.