(No. 48114.—

HAROLD A. LEDINGHAM *et al.,* Appellants, v. BLUE CROSS PLAN FOR HOSPITAL CARE OF HOSPITAL SERVICE CORPORATION *et al.,* Appellees.

*Opinion filed October 1, 1976.*

John Dale Stobbs, of Stobbs Law Offices, Ltd., of Alton, for appellants.

Robert F. Kaucher, of Meyer and Kaucher, of Belleville, for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

A Madison County circuit court jury awarded plaintiffs, Harold A. Ledingham and his wife Rita, $9,200 as compensatory and punitive damages for the failure of corporate defendants Blue Cross Plan for Hospital Care of Hospital Service Corporation and Blue Shield of Illinois Medical Service to honor plaintiffs' claims for amounts paid by them for medical and hospital care. Defendants appealed from the judgment entered on that verdict, and the Fifth District Appellate Court reversed the punitive damages award, directing the trial court to enter judgment for $1,592.85, the amount of the compensatory damages and interest. (29 Ill. App. 3d 339.) The original appellate court opinion filed June 12, 1975, made no reference to the costs of the litigation. Its mandate, issued July 21, treated its judgment as a reversal, and authorized defendants to recover their costs from plaintiffs. Thereafter defendants requested the appellate court clerk to tax various items as costs in a total amount of $2,557.30. Immediately upon receiving a copy of that request on October 29, plaintiffs moved that the appellate court reconsider the matter of costs, and that court then disallowed several items, apportioning the remainder 70% against plaintiffs and 30% against defendants. So divided, defendants' costs assessed against plaintiffs

total $1,522.92. Plaintiffs sought and we allowed leave to appeal.

Sometime after July 15, 1969, plaintiffs applied to defendants for medical and hospitalization coverage and were issued a policy with an effective date of August 1, 1969. No physical examination was required of the insureds, but the policy contained an exclusion for preexisting illnesses or conditions. Since 1967 Mrs. Ledingham had consulted a doctor every six months for routine gynecological examinations and "Pap Tests." Her most recent test before applying for medical coverage was in mid-May, 1969, and the results were negative.

On August 3, 1969, Mrs. Ledingham experienced prolonged and excessive vaginal bleeding. Bed rest and medication failed to cure her condition, and on August 14 a diagnostic dilatation and curettage was performed with inconclusive results. Her condition stabilized until about September 9, when she hemorrhaged and was given medication. Her condition again stabilized briefly, but then degenerated, and on October 6, her doctor diagnosed the presence of an adenoma, a precursor of a uterine tumor. Finally, on November 25, 1975, a hysterectomy was performed. After the surgery, a pathologist confirmed the presence of the adenoma, and also discovered two small tumors within the wall of the uterus, called leiomyomata.

Plaintiffs submitted claims for medical and hospital expenses totaling $1,549.60, but defendants refused payment on the grounds that the conditions from which Mrs. Ledingham suffered had existed prior to the effective date of the policy and were excluded from coverage. Defendants based their refusal to pay on their belief that Mrs. Ledingham's condition could not have arisen and progressed to its severity in the two-day period from August 1 to August 3, when she began hemorrhaging. Defendants also relied on a December 5, 1969, report which they received from Mrs. Ledingham's doctor. In it the doctor

stated that it was "unknown" whether the adenoma and leiomyomata were present on August 1, 1969; that symptoms first appeared after August 1; and that no medical or surgical treatment had been provided for these conditions before August 1. When sued, defendants asserted the affirmative defense of a preexisting condition but presented no evidence at trial.

As earlier indicated, the appellate court reversed the punitive damages award on June 12, 1975. No petition for rehearing was filed, nor was leave to appeal from that judgment sought by either party. While plaintiffs now argue that the appellate court reversal of the punitive damage award was erroneous, consideration of that question is precluded by their failure to seek review within the prescribed time limits. Ill. Rev. Stat. 1975, ch. 110A, par. 315(b).

Defendants argue that the appellate court order apportioning costs is not properly before us. They urge that plaintiffs' October 29 motion was filed too late if intended as a petition for rehearing, since the time for seeking rehearing had expired, and that, if intended as a motion to retax costs, it was premature. Plaintiffs' motion was captioned "Plaintiffs-Appellees Motion to Reconsider or Set Aside Order of Court Taxing Appeal Costs to Plaintiffs-Appellees and For Other Relief", and they do not suggest that it was a petition for rehearing.

Defendants also urge that plaintiffs have been guilty of "extreme dilatoriness" in seeking relief. It is true that plaintiffs' counsel might well have anticipated that the reversal of the punitive damages award would result in the taxing against plaintiffs of a substantial portion of defendants' costs. It is also true that the appellate court mandate indicated defendants were entitled to recover their costs from plaintiffs. The fact remains, however, that defendants did not advise the clerk of the items and amounts and request their taxing as costs until October 23; and plaintiffs filed their motion on the day they received a

copy of defendants' request.

Defendants' argument that the motion was premature if intended as a motion to retax costs (Ill. Rev. Stat. 1975, ch. 33, par. 26) is apparently premised on the fact that the mechanics of converting the award of costs into a dollar amount had not actually been completed by the appellate court clerk (Ill. Rev. Stat. 1975, ch. 33, par. 25) at the time the motion was filed. We agree that a motion to retax should ordinarily await the clerk's action, but here plaintiffs were not merely arguing that some items were improperly taxed. Instead, they sought a completely different apportionment of the costs, relief not within the competence of the clerk to award. The appellate court apparently found no reason to delay the disposition of plaintiffs' motion until the clerk had actually taxed the costs, and neither do we.

The effect of the appellate court judgment, although stated as a reversal, was actually to affirm the award of compensatory damages and reverse the award of punitive damages. The allocation of costs on appeal is therefore governed by section 24 of "An Act to revise the law in relation to costs" (Ill. Rev. Stat. 1975, ch. 33, par. 24), which reads:

> "Where such judgment or decree shall be reversed in part, and affirmed in part, the costs shall be apportioned between the parties, according to the discretion of the supreme court."

While this section was passed before the existence of appellate courts in Illinois, it is now applicable to them. See *Dorn v. Smith* (1899), 85 Ill. App. 516, 521.

Although appellate courts are authorized in these circumstances to apportion costs, we believe the apportionment of 70% of defendants' costs against plaintiffs cannot stand. We recognize that plaintiffs are in part responsible for their own dilemma, which has resulted from their claim for punitive damages. Nevertheless, they did have a valid claim for compensatory damages, and

344

defendants refused to pay that claim on what apparently was little more than a belief that Mrs. Ledingham would be unable to prove her hospitalization and surgical treatment were not the result of physical conditions predating the effective date of the insurance coverage. Although defendants raised the affirmative defense of a preexisting condition, they offered no evidence at trial. Under these circumstances, and since the appellate court affirmed in part and reversed in part, an appropriate apportionment, in our opinion, requires that the costs be borne by the party incurring them, and we so hold.

Accordingly, the judgment of the Appellate Court for the Fifth District apportioning costs is reversed, and the cause is remanded to that court for entry of an appropriate order.

*Reversed and remanded, with directions.*