**J. Robert KELLY, Plaintiff,**

v.

**Albert John STRATTON and Squadron Insurance Co., Ltd., Defendants.**

No. 82 C 2813.

United States District Court,
N.D. Illinois, E.D.

Nov. 22, 1982.

9. *See* note 8, *supra.*

Bruce M. Friedman, Burton I. Weinstein, Stuart C. Wallace, Chicago, Ill., for plaintiff.

Robert L. Kiesler, Thomas B. Underwood, Kiesler & Berman, Chicago, Ill., for defendant Albert John Stratton.

No appearance for defendant Squadron Ins. Co.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

Plaintiff J. Robert Kelly was, through October 1979, a professional hockey player under contract with the Edmonton Oilers professional hockey club. On October 9, 1979, Edmonton loaned him to its minor league affiliate, the Cincinnati Stingers, reserving the right to recall him at any time. The day after reporting to the Stingers, Kelly injured his right hand and, he alleges, became permanently disabled as a hockey player. At the time, plaintiff alleges, he was the beneficiary of three insurance policies which covered the disability. The first is a policy issued to the National Hockey League ("NHL") under its collective bar-

gaining agreement with the National Hockey League Players Association ("NHLPA"), which provides "career ending" disability insurance for every player under contract with an NHL team, in the amount of $100,-000. The second policy is a group policy issued to the NHLPA and made available to all members of that association. Plaintiff claims that he was insured against career ending disability under this policy for $100,-000. The third policy is similar to the second and has a face amount of $50,000 in a case of career ending disability. All three policies were issued by Lloyds of London. Defendant Albert J. Stratton is an underwriter with Lloyds who was named as a defendant by stipulation of the parties. Defendant Squadron Insurance Company ("Squadron"), plaintiff alleges, has assumed liability under the third policy described above to the extent of fifty percent of all liability under that policy.[1]

As stated earlier, plaintiff asserts that his disability falls within the terms of all three policies. He alleges that he has "complied with each and every requirement" of the policies and is entitled to benefits thereunder. Complaint, count I ¶ 15; count II ¶ 28; count III ¶ 41; count IV ¶ 44. He alleges that defendants have failed and refused, without cause, to pay him the benefits which he claims are due, despite his compliance with the terms of the policies. Complaint, count I ¶ 16; count II ¶ 29; count II ¶ 42; count IV ¶ 44.

Counts I through III arise under the various policies and under Ill.Rev.Stat. ch. 73, § 767 (1979), which provides that in any action by or against an insurance company in which there is in issue the company's liability on a policy of insurance or for unreasonable delay in settling a claim, if it appears to the court that the company's action or delay is "vexatious and unreasonable," the court may allow as part of the taxable costs in the action reasonable attorney's fees and a statutory penalty not to exceed $5,000. In count IV, plaintiff incor-

---

1. A default judgment in the amount of $25,000 was entered against Squadron on November 9, 1982.

porates by reference his earlier allegations and then states, in a conclusory fashion, that "[t]he failure and refusal of Defendants to pay as hereinbefore set forth was vexatious, improper, wilful, in bad faith and tortious, and was intended at all times to oppress and harm Plaintiff and to deprive him of benefits due him under the respective insurance policies." Complaint, count IV ¶ 45.[2] We have jurisdiction over the case under 28 U.S.C. § 1332(a) (1976).

Defendant Stratton has moved to dismiss count IV under Fed.R.Civ.P. 12(b)(6), alleging that Illinois law holds that punitive damages, as requested by plaintiff in count IV, are not recoverable in actions such as this one based on a breach of contract, and that in any case, plaintiff's conclusory allegations of bad faith are insufficient under Illinois law to state a claim upon which relief may be granted. For the reasons stated below, we deny defendant's motion.

Under *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we must look to Illinois law in deciding the merits of defendant's motion. Under Illinois law, while punitive damages generally are not recoverable in actions for breach of contract, that rule has no application where the cause of action is premised upon a separate and independent tort. *See Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 187, 23 Ill.Dec. 559, 566, 384 N.E.2d 353, 360 (1978). Thus, the issue we must examine is whether an insurer may be held liable in tort for its bad faith failure to pay a legitimate claim.

The Illinois Supreme Court has not addressed the question whether a cause of action exists for an insurer's bad faith conduct. The decisions of the various districts of the Illinois Appellate Court are in conflict. *Ledingham v. Blue Cross Plan,* 29 Ill.App.3d 339, 330 N.E.2d 540 (5th Dist. 1975), *rev'd as to costs,* 64 Ill.2d 338, 1 Ill.Dec. 75, 356 N.E.2d 75 (1976), holds that a cause of action exists for an insurer's bad

faith refusal to make payments under a policy. In *Ledingham,* the court examined whether the relationship of insurer and policyholder gives rise to implied duties the breach of which would be tortious. The court reviewed several decisions from other states, particularly California, and held that such a duty existed. *Id.* at 348, 330 N.E.2d at 547. The court further held that where a plaintiff demonstrates that the insurer's conduct was outrageous, malicious, and/or threatening, punitive damages are available. *Id.* at 351–52, 330 N.E.2d at 549.

*Debolt v. Mutual of Omaha,* 56 Ill.App.3d 111, 13 Ill.Dec. 656, 371 N.E.2d 373 (3d Dist.1978) rejected the *Ledingham* analysis. The court noted that the Illinois legislature had provided for recovery of punitive damages and attorney's fees by an insured where an insurance company's refusal to pay or honor its contract is unreasonable and vexatious. *Id.* at 115–16, 13 Ill.Dec. at 660, 371 N.E.2d at 377; *see* Ill.Rev.Stat. ch. 73, § 767 (1979). It stated that "[w]here the legislature has provided a remedy on a subject matter we are not only loath [sic] but in addition harbor serious doubts as to the desirability and wisdom of implementing or expanding the legislative remedy by judicial decree." 56 Ill.App.3d at 116, 13 Ill.Dec. at 660, 371 N.E.2d at 377. The court believed it significant that no such statute existed in California, the state whose courts had provided substantial support for the analysis in *Ledingham. Id.* at 117, 13 Ill.Dec. at 661, 371 N.E.2d at 378. Therefore, it affirmed the trial court's dismissal of the plaintiff's claim for compensatory and punitive damages based upon defendant's bad faith.

The First District of the Appellate Court followed *Debolt* in *Tobolt v. Allstate Insurance Co.,* 75 Ill.App.3d 57, 68–71, 30 Ill.Dec. 824, 831–34, 393 N.E.2d 1171, 1178–81 (1st Dist.1979). The Second District, in *Hoffman v. Allstate Insurance Co.,* 85 Ill.App.3d

---

**2.** None of the allegations in counts I through III, which are incorporated by reference into count IV, spells out the alleged vexatious and improper activities of defendants in any greater detail. *See* Complaint, count I ¶ 17 ("such action or delay is unreasonable and vexatious"); count II ¶ 30 (same); count III ¶ 43 (same).

631, 40 Ill.Dec. 925, 407 N.E.2d 156 (2d Dist.1980), while agreeing with *Debolt* and *Tobolt* that the statutory penalty provided in § 767 preempted a plaintiff's right to recover punitive damages for an insurer's breach of its duty of good faith and fair dealing, held that § 767 had not preempted a plaintiff's right to claim compensatory damages in tort. The court reasoned that § 767, on its face, provided only that a court could award the penalty provided in the statute as part of taxable costs, thus leaving open the possibility of a recovery of compensatory damages. *Id.* at 631, 40 Ill. Dec. at 928, 407 N.E.2d at 159.

The opinion in *Ledingham* bears no indication that the court in that case considered the effect of § 767 on a plaintiff's right to assert a common law claim for an insurer's bad faith. Indeed, it was not until 1977, two years after *Ledingham* was decided, that the Illinois General Assembly amended § 767 to provide for a statutory penalty in addition to an award of attorney's fees. Prior to the passage of P.A. 80–814 in 1977, § 767 provided only for an award of "reasonable attorney's fees" not to exceed $1000. *See* Ill.Rev.Stat. ch. 73, § 767 (1967). Of the appellate courts that have addressed the issue of the effect of § 767, all have held that the statute, to some extent, limits a plaintiff's right to recover in a bad faith case. However, under the approach adopted in *Debolt* and *Tobolt,* we would be required to dismiss count IV in its entirety, while under *Hoffman* we would have to strike only the punitive damages claim in that count. We must, therefore, determine which, if any, of these approaches to follow.[3]

Our colleague, Judge Milton I. Shadur of this district, has developed a method to be used when intermediate appellate court decisions are in conflict and no state supreme court authority exists. In *National Can Corp. v. Whittaker Corp.,* 505 F.Supp. 147, 148–49 n. 2 (N.D.Ill.1981), he stated that *Erie* requires a federal court to decide issues of substantive law in the same way as would a state trial judge sitting in the same location. Thus, because this district lies in Cook County, Illinois, Judge Shadur concluded in *National Can* that he must decide substantive law questions as if he were sitting as the Circuit Court of Cook County and must, therefore, follow the decisions of the First District of the Illinois Appellate Court. *See also, e.g., Slate Printing Co. v. Metro Envelope Co.,* 532 F.Supp. 431, 434 (N.D.Ill.1982); *Bonanno v. Potthoff,* 527 F.Supp. 561, 563 (N.D.Ill.1981); *Instrumentalist Co. v. Marine Corps League,* 509 F.Supp. 323, 339 (N.D.Ill.1981).[4]

We are not persuaded that the approach adopted in *National Can* comports with our responsibilities under *Erie.* First, it should be noted that the Eastern Division of the Northern District of Illinois is comprised not only of Cook County but also of De-Kalb, DuPage, Grundy, Kane, Kendall, Lake, LaSalle, McHenry, and Will counties, all of which lie in districts other than the First District of the Illinois Appellate Court. *Compare* 28 U.S.C. § 93(a)(1) (1976 & Supp. IV 1980) *with* Ill.Rev.Stat. ch. 37, §§ 1.1–1.5 (1979). The complaint in this case does not allege plaintiff's county of residence, and therefore we do not know the Illinois appellate district in which plaintiff resides. Moreover, even were we able to determine the county of plaintiff's residence from the complaint, Illinois law permits a plaintiff in a case such as this one, where all defendants are nonresidents of Illinois, to bring his action in any county. Ill.Rev.Stat. ch. 110, § 2–102 (1982). Thus, the *National Can* approach is inconsistent with *Erie* in that it might require a federal court to apply a rule of decision that would not be used if plaintiff filed in state court.

---

**3.** Plaintiff, while recognizing that under *Debolt* and *Tobolt* we would be required to dismiss count IV, has not argued that § 767 does not apply to defendants and that the analysis in those cases thus has no application. If § 767 did not apply to defendants, *Robertson v. Travelers Ins. Co.,* 100 Ill.App.3d 845, 849, 56 Ill. Dec. 222, 225, 427 N.E.2d 302, 306 (5th Dist. 1981) would dictate that count IV be permitted to stand.

**4.** All of the cases cited were decided by Judge Shadur.

In fact, *National Can* would enable a defendant to forum-shop by removing to federal court actions, brought in non-Cook County areas of the Northern District of Illinois, in which it wants to avail itself of the law of the First District of the Illinois Appellate Court.

Cases such as *Gates Rubber Co. v. USM Corp.,* 508 F.2d 603, 607 (7th Cir.1975) and *Warner v. Gregory,* 415 F.2d 1345, 1346 (7th Cir.1969), *cert. denied,* 397 U.S. 930, 90 S.Ct. 817, 25 L.Ed.2d 112 (1970) require us, we believe, to avoid the approach adopted in *National Can.* As stated by Professor Corbin in describing a federal court's task in applying state law:

> When the rights of a litigant are dependent upon the law of a particular state, the court of the forum must do its best (not its worst) to determine what that law is. It must use its judicial brains, not a pair of scissors and a paste pot. Our judicial process is not mere syllogistic deduction, except at its worst.

Corbin, *The Laws of Several States,* 50 Yale L.J. 762, 775 (1941) (quoted in *Warner v. Gregory,* 415 F.2d at 1346). The appellate court decisions provide us with data for ascertaining the relevant Illinois law, but we may disregard them if we are convinced that the Illinois Supreme Court would decide otherwise.[5] *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *Gates Rubber Co. v. USM Corp.,* 508 F.2d 603, 607 (7th Cir.1975); *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 469 F.Supp. 836, 863 (N.D.Ill.1979), *aff'd,* 616 F.2d 1006 (7th Cir.1980). And unlike *Mitchell v. Young Refining Corp.,* 517 F.2d 1036, 1040 n. 3 (5th Cir.1975), this is not a case in which "the overwhelming weight of authority" in Illinois favors a particular approach to the issue of the ef-

fect of § 767. Thus, we will examine § 767 in an effort to determine what the Illinois Supreme Court would decide if faced with the question that was presented in *Debolt, Tobolt,* and *Hoffman. See Gates Rubber,* 508 F.2d at 607 (federal court may disregard appellate court decisions if convinced that highest state court would decide otherwise); *Hood v. Dun & Bradstreet, Inc.,* 486 F.2d 25, 31 (5th Cir.1973) (federal court need not follow state court decisions where it appears that state supreme court considering identical issue would not rely on such precedent), *cert. denied,* 415 U.S. 985, 94 S.Ct. 1580, 39 L.Ed.2d 882 (1974); *Warner v. Gregory,* 415 F.2d at 1346 (*Erie* does not require automatic application of last highest state court decision); *Calvert v. Katy Taxi, Inc.,* 413 F.2d 841, 846 (2d Cir. 1969) (federal court cannot permit itself to be confined by state court decisional approaches if it has sound grounds to believe that highest state court would adopt different approach).

The issue with which we are presented is one of statutory construction. Section 767, as we have stated, provides that in any action in which there is in issue the liability of a company on a policy of insurance or the amount payable under a policy, or an action for unreasonable delay in settling a claim, and the court finds that the company's action or delay is vexatious or unreasonable, it may allow as part of the taxable costs attorney's fees and a sum not to exceed $5,000.[6] It is susceptible of several reasonable constructions. First, one may interpret it, as did the courts in *Debolt* and *Tobolt,* as precluding any damage recovery except on the insurance contract itself. While the statute creates a duty on the part of an insurer not to refuse or delay payment vexatiously and unreasonably, it limits any re-

---

**5.** Unfortunately, Illinois does not have a procedure for certifying disputed questions of state law to the Illinois Supreme Court for determination. *See, e.g., Lehman Brothers v. Schein,* 416 U.S. 386, 390–91, 94 S.Ct. 1741, 1743–44, 40 L.Ed.2d 215 (1974).

**6.** The statute actually provides that the additional sum that a court may award is not to

exceed any one of three amounts: 1) 25% of the amount which the party is entitled to recover against the company; 2) $5,000; or 3) the excess of the amount the party is entitled to recover over the company's offer of settlement prior to the lawsuit. The effect of the statute, however, is to limit the penalty to $5,000.

covery for breach of that duty to the liquidated sum provided in the statute. Under this interpretation, § 767 evinces a legislative policy of limiting the liability of insurance companies; thus, no tort recovery is available.

Second, one may interpret § 767 as providing a statutory penalty in addition to the insured's recovery on the insurance contract but as not preempting the insured's common law right to recover in tort. The language of the statute supports this interpretation: § 767(a) & (c) refer to "the amount which the court or jury finds [the plaintiff] is entitled to recover." That language does not expressly limit the amounts a court or jury might find that a plaintiff is entitled to recover in tort on account of the insurer's actions. The statute expressly adds an additional recovery to the insured's recovery on the contract, but it does not speak to the availability of a tort recovery. Under this interpretation, therefore, one would not construe § 767 as limiting a plaintiff's ability to recovery in tort if the insurer's actions breach an independent duty vis-a-vis the insured.

*Hoffman* provides the third possibility. As noted by the court in that case, § 767 deals expressly with penalties or punitive damages but not with other amounts an insured might be entitled to recover. Because the statute provides for a liquidated amount in the form of a penalty, it might be interpreted as limiting punitive damages recovery against an insurance company, whether in an action in tort or an action on the contract, but as leaving open the possibility of proof by the plaintiff of injury, suffered as a result of the insurer's breach of a duty in tort, which gives rise to compensatory damages.

Determining the proper interpretation of § 767 requires an examination of the legislature's intent when it amended the statute in 1977. Before 1977, § 767 provided only for an award of attorney's fees where vexatious and unreasonable delay or nonpayment was shown. Under the pre-1977 statute, the court in *Lynch v. Mid-American Fire and Marine Insurance Co.,* 94 Ill. App.3d 21, 49 Ill.Dec. 567, 418 N.E.2d 421 (4th Dist.1981), held that the legislature intended by that statute only to grant the courts authority to award attorney's fees and not to cover the field of awarding compensation for an insurer's unreasonable and vexatious actions. The 1977 amendment permits a penalty in addition to an award of attorney's fees and thus represents the legislature's first foray into the field of monetary recovery (as opposed to recovery of "costs" as such) for an insurer's vexatious conduct. The question, essentially, is whether the 1977 amendment leaves open to an insured the possibility of recovery in tort.

In determining the meaning of a statutory provision, the Illinois courts look to the language of the statute and the statute's purpose. *E.g., Miller v. Department of Registration & Education,* 75 Ill.2d 76, 81, 25 Ill.Dec. 644, 646, 387 N.E.2d 300, 302 (1979). Additional aids in ascertaining the legislative intent of an enactment are the reasons for the enactment, contemporaneous conditions, and existing circumstances. *E.g., Richter v. Collinsville Township,* 97 Ill.App.3d 801, 807, 53 Ill.Dec. 165, 170, 423 N.E.2d 549, 554 (5th Dist.1981). Where, as here, the language of the statute is insufficient to determine the intent of the legislature, a court may look to such "extrinsic" sources as the statute's legislative history. *See Moran v. Katsinas,* 16 Ill.2d 169, 172–73, 157 N.E.2d 38, 39 (1950); *Mid South Chemical Corp. v. Carpentier,* 14 Ill.2d 514, 517–18, 153 N.E.2d 72, 74 (1958); *see also* 2A Sutherland, Statutory Construction § 48.01 at 181–82 (4th ed. 1973 & Supp. 1982). Thus, in order to determine the effect of § 767 we turn to the legislative history of the 1977 amendment.

The 1977 amendment to § 767 began as Senate Bill ("SB") 517. As originally filed, SB 517 provided that in addition to the attorney's fees already permitted by § 767, in a case in which a court found that the insurer had resisted or delayed settlement unreasonably, it could allow as part of the taxable costs the greater of $100 or twice the amount the prevailing party was other-

wise entitled to recover. *See* 1 Legislative Reference Bureau, Legislative Synopsis & Digest, no. 23, 80th Gen. Assembly (Senate) 389 (1977). The bill passed the Senate in its original form on May 25, 1977. *Id.* at 390. In the House, the bill was assigned to the Insurance Committee, which amended it. *Id.; see also* Record of Proceedings, Ill.Gen. Assem. (House), June 17, 1977 at 37. The amendment changed the bill to the form in which it was finally enacted, that is, providing that in addition to attorney's fees the court could award a sum equal to 25% of the prevailing party's recovery, or the difference between the recovery and the insurer's last offer of settlement, or $5,000, whichever was greater. *See* 1 Legislative Reference Bureau, *supra* at 390. On June 24, 1977, SB 517 passed the House as amended. On that date, Representative Bennett, apparently the floor manager of the bill, stated as follows:

> REP. BENNETT: ... This Bill came out of the Insurance Laws Study Commission and simply changes the civil penalty for vexatious or [sic] unreasonable delay in the settlement of claims to provide should a person prove that delay [sic]. Provides for the payment of costs to that person, attorney fees and an amount not to exceed five thousand dollars. As I indicated, this came from the Insurance Laws Study Commission. It was amended in the House in Committee to conform with some of the problems that the industry had....

Record of Proceedings (House), June 24, 1977 at 64–65.

After the amended bill passed the House, it returned to the Senate, where it was passed. Record of Proceedings (Senate), June 26, 1977 at 292. While this history is, at best, sketchy, it provides some support for the view that as finally passed the 1977 amendment to § 767 had as part of its intent the limitation of insurance companies liability: the House committee amendment lowered the amount of the statutory penal-

ty available under the original bill, "to conform with some of the problems that the industry had." However, this does not assist us in choosing among the possible interpretations of § 767 noted earlier; in particular, the floor history does not tell us whether the legislature intended only to limit an insurer's liability under the statute or to limit it generally.

The remarks of Representative Bennett quoted above refer to the Insurance Laws Study Commission. The Commission published its 1977 report shortly after SB 517 passed the Senate as amended but before the bill was signed by the governor in September 1977. *See* Illinois Insurance Laws Study Commission, Final Report to the Governor and 80th General Assembly (July 1977). We believe that the Commission's comments on the amended bill are instructive as to the intent of the legislature.[7] *See People v. Tuohy,* 31 Ill.2d 236, 239, 201 N.E.2d 425, 427 (1964) (referring to report of committee which drafted proposed Illinois Revised Criminal Code of 1961 to determine legislative intent); 2A Sutherland, Statutory Construction § 48.09 at 208 (4th ed. 1973 & Supp.1982). In reference to SB 517, the Commission's report states:

*Senate Bill 517*

> This bill would substantially increase the remedies which are available to the policyholders of an insurance company if that company vexatiously and unreasonably delays the settlement of a claim with the policyholder. Although the statutory provision is not new, the maximum remedy of $1,000 established in the 1937 Insurance Code has never been modified. That remedy is entirely insufficient today.
>
> Senate Bill 517 as originally introduced substituted a unique new remedy for the current statute. As originally introduced, the bill would have provided each policyholder with attorneys fees plus the greater of $100 or twice the amount vexatiously and unreasonably withheld by

7. The Commission was made up of five state senators and five state representatives. *See*

Final Report at i.

the insurance company. In order to assure passage of the bill, the bill was later amended so that the prior law was changed to provide attorneys fees plus an amount not to exceed $5,000. While the cap in the amended bill certainly limits the liability of companies if they engage in vexatious and unreasonable delay, the amended bill still significantly increases the remedies of insureds. Under the bill, in any action where the insured proves vexatious and unreasonable delay, the insured will get his actual damages, plus attorneys fees, plus an amount to $5,000. Thus, the insured will suffer no out-of-pocket loss and can obtain an additional award of up to $5,000.

An interesting observation on this bill may be in order. Insurance companies, particularly in California, are experiencing with some frequency the problem of punitive damages being demanded in almost any litigated claim. Moreover, in some of these cases the juries are awarding punitive damages which are astronomical when compared to the actual claim in question. Traditionally, punitive damages have been seldom used. However, with its new prevalence as an integral element of litigation *the Commission thought that the insurance industry might have taken the opportunity to utilize Senate Bill 517 to establish statutory limits on the amount of punitive damages. This was not done. Perhaps this disinterest reflects the disquietude which the Illinois Supreme Court has had with regard to whether punitive damages may be constitutional* (footnotes omitted).

Illinois Insurance Laws Study Commission, Final Report to the Governor and 80th General Assembly 18–19 (1977) (emphasis supplied).

The Commission's discussion of the amended SB 517 indicates that while the original bill was amended to limit the liability of insurance companies *under the statute,* the legislation was in no way intended to limit the common law authority of the courts to award damages where an independent tort is proved by the insured: "the Commission thought that the insur-

ance industry might have taken the opportunity to utilize Senate Bill 517 to establish statutory limits on the amount of punitive damages. This was not done." On the basis of the language of the statute and the Commission's report, we conclude that the purpose of § 767, as amended in 1977, was to aid plaintiffs by establishing a right to a limited recovery of a liquidated sum if they can make the minimal showing that the insurance company acted vexatiously and unreasonably. It does not limit the right of such plaintiffs to prove that the insurance company's actions violated an independent duty in tort and to recover all damages allowed by the common law as a result of the tort. We believe that the Illinois Supreme Court, if presented with the issue, would examine the legislative history that we have reviewed; this was not done by the courts in *Debolt, Tobolt,* and *Hoffman.* The legislative history is compelling evidence, which we may not overlook, that the Illinois Supreme Court would decide that § 767 does not limit the right of an insured to plead and prove a cause of action against an insurer for the breach of an independent duty in tort not to act in "bad faith" toward the insured. Moreover, we find *Ledingham* persuasive as to the existence of such a cause of action, and we believe that the Illinois Supreme Court would follow the approach in that case. Therefore, we deny defendant's motion to dismiss count IV.

Defendant also argues that because plaintiff has failed to allege any facts in support of his bad faith claim, it must be dismissed. This contention is without merit. We recognize that several Illinois appellate courts have dismissed bad faith claims due to insufficient pleading. *E.g., Urfer v. Country Mutual Insurance Co.,* 60 Ill.App.3d 469, 473–74, 17 Ill.Dec. 744, 746–47, 376 N.E.2d 1073, 1075–76 (4th Dist.1973); *see also Tobolt,* 75 Ill.App.3d at 71–72, 30 Ill. Dec. at 834, 393 N.E.2d at 1181 (alternative holding). In federal court, however, the issue whether a claim has been pleaded adequately is one of federal law. *See* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1204 at 71–73 (1969 & Supp.

1982) (citing cases). The federal rules of civil procedure do not require "fact pleading." *See* Fed.R.Civ.P. 8(a); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Count IV states plaintiff's claim in a fashion adequate to notify defendant of the nature of the claim against it so that discovery can proceed. If it appears after discovery is conducted that plaintiff cannot make out a case of bad faith under Illinois law, defendant may move for summary judgment under Fed.R.Civ.P. 56(b). We will not, however, dismiss plaintiff's claim under Fed.R.Civ.P. 12(b)(6).

Defendant's motion to dismiss is denied. Defendant is ordered to answer the complaint within 20 days after entry of this order on the docket of this action. Discovery/trial schedules heretofore established to stand.