JOHN D. KINNEY *et al.*, Plaintiffs-Appellants, *v.* ST. PAUL MERCURY INSURANCE COMPANY, Defendant-Appellee.

First District (1st Division)   No. 83—0668

Opinion filed December 12, 1983.

Freeborn & Peters, of Chicago (Leland W. Hutchinson, Jr., of counsel), for appellants.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Norman A. Miller, Timothy J. Reagan, and George D. Gardner, of counsel), for appellee.

JUSTICE GOLDBERG delivered the opinion of the court:

John D. Kinney and Teresa B. Kinney (plaintiffs) brought this action against their insurer, St. Paul Mercury Insurance Company (defendant). Plaintiffs' second amended complaint consists of three counts. Count I seeks compensatory damages of $20,000 based on an alleged breach of contract. Count II seeks $20,000 as compensatory damages and $5,000 as a penalty based on an alleged breach of an implied covenant of duty of good faith and fair dealing. Count III seeks $20,000 in compensatory damages and $50,000 in punitive damages based on alleged fraud.

Defendant moved for judgment on the pleadings, or alternatively to strike plaintiffs' second amended complaint. The trial court denied defendant's motion as to count I. However, the trial court dismissed counts II and III of the second amended complaint with prejudice on the theory that the prayer for relief in count II exceeded the remedies provided in the insurance code. (Ill. Rev. Stat. 1981, ch. 73, par. 767.) Plaintiffs appeal.

A motion to dismiss admits all well-pleaded facts. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426, 430 N.E.2d 976.) However, conclusions and inferences not specifically supported by facts are not so admitted. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426.) In determining the sufficiency of a complaint, this court must strip the complaint of unsupported conclusions and inferences, and then determine whether it alleges sufficient facts to sustain a cause of action. *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426.

Basically, plaintiffs' second amended complaint alleged their home suffered snow damage on January 14, 1979. They were insured by defendant. "Shortly after the damage," plaintiffs "filed a timely notice" with defendant. On or about July 18, 1979, "following the instructions of defendant," plaintiffs obtained an estimate of $10,914 for repair of the damage to their home. The estimate was "promptly" communicated to defendant.

Plaintiffs further alleged that in October of 1979, a claim representative and adjuster employed by defendant inspected plaintiffs' residence, accompanied by plaintiffs' contractor. Without plaintiffs'

knowledge, the adjuster wrote an estimate for repairs of $3,950.70. At the same time, the adjuster surreptitiously informed plaintiffs' contractor his actual estimate of repairs was $9,500. The adjuster asked plaintiffs' contractor whether he could reduce his original estimate. Shortly thereafter, the contractor estimated the repairs would cost $9,468. Defendant refused to accept or reject the new estimate.

Plaintiffs also alleged the written estimate supplied by the adjuster was "fraudulent and totally inadequate *** which was wilfully made unrealistically low as a ploy and negotiating tactic to cause [plaintiffs] to settle their claim" for a figure much lower than that to which plaintiffs were entitled. Finally, on June 6, 1980, defendant offered plaintiffs $5,000 as a final and complete settlement of their claim, an offer which plaintiffs rejected.

Section 155 of the Illinois Insurance Code provides in pertinent part (Ill. Rev. Stat. 1981, ch. 73, par. 767):

> "In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> (b) $5,000;
>
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action."

Our examination of the law of Illinois shows a solid series of five opinions by the Appellate Court of Illinois, all uniform in approving the cause of action predicated upon the above quoted section of the Illinois Insurance Code. These are the pertinent cases:

*Hamilton v. Safeway Insurance Co.* (1982), 104 Ill. App. 3d 353, 432 N.E.2d 996, *appeal denied* (1982), 91 Ill. 2d 559.

*Hoffman v. Allstate Insurance Co.* (1980), 85 Ill. App. 3d 631, 407 N.E.2d 156, *appeal denied* (1980), 81 Ill. 2d 602.

*Tobolt v. Allstate Insurance Co.* (1979), 75 Ill. App. 3d 57, 393 N.E.2d 1171, *appeal denied* (1979), 79 Ill. 2d 624.

*Urfer v. Country Mutual Insurance Co.* (1978), 60 Ill. App. 3d

469, 376 N.E.2d 1073, *appeal denied* (1978), 71 Ill. 2d 616.

*Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 371 N.E.2d 373, *appeal denied* (1978), 71 Ill. 2d 602.

We need not quote from any of these cases at length. We should stress, however, the following quotation from *Tobolt v. Allstate Insurance Co.* (1979), 75 Ill. App. 3d 57, 69, quoting *Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 116:

"We are of the opinion that the legislature has intended to provide a remedy to an insured who encounters unnecessary difficulties with an unreasonable and vexatious insurance company. The insured can maintain an action on the contract for recovery of withheld policy benefits and upon proper finding by the court can be awarded attorney fees in addition to all other costs. Where the legislature has provided a remedy on a subject matter we are not only loath but in addition harbor serious doubts as to the desirability and wisdom of implementing or expanding the legislative remedy by judicial decree. [Citations.]."

In *Urfer v. Country Mutual Insurance Co.* (1978), 60 Ill. App. 3d 469, 475, *Tobolt v. Allstate Insurance Co.* (1979), 75 Ill. App. 3d 57, 70, *Hoffman v. Allstate Insurance Co.* (1980), 85 Ill. App. 3d 631, 634, and *Hamilton v. Safeway Insurance Co.* (1982), 104 Ill. App. 3d 353, 356, the court stated that the above-quoted section of the Illinois Insurance Code preempted the filing of a common law action for the same relief, *i.e.*, for damages and for violations of duties of good faith and fair dealing.

In addition, plaintiffs have framed their prayer for punitive damages upon a theory of alleged fraud. In this regard the instant case is comparable to *Hoffman*. The *Hoffman* court expressly stated:

"Further, plaintiff's Exhibit H indicates that plaintiff returned the $116.37 check to defendant, uncashed. Consequently, no apparent injury resulted from any purported reliance on defendant's representations, and the dismissal of count III [based on fraud] was proper." 85 Ill. App. 3d 631, 634.

■ Similarly in the case at bar, plaintiffs did not accept defendant's settlement offer. Furthermore, plaintiffs' pleadings are completely devoid of any allegation of detrimental reliance by plaintiffs on any representation by defendant. (See *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286, 402 N.E.2d 599.) Therefore the dismissal of count III sounding in fraud was proper.

In addition, in each and all of these five cases the Supreme Court of Illinois denied leave to appeal. In *Urfer*, leave to appeal was denied despite a specially concurring opinion and a dissent predicated upon

*Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540.

However, "such action has no precedential effect and in no way amounts to a consideration of the merits of the cases. Nor does it indicate approval of the appellate court's action." *Ralph v. Board of Education* (1981), 84 Ill. 2d 436, 442, 420 N.E.2d 147.

■ We do not find *Ledingham* applicable to the instant case. The court there made no mention of the pertinent section of the Insurance Code but proceeded entirely upon a common law theory. *Ledingham* has been criticized in *Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 114-15, *Urfer v. Country Mutual Insurance Co.* (1978), 60 Ill. App. 3d 469, 471, *Tobolt v. Allstate Insurance Co.* (1979), 75 Ill. App. 3d 57, 68 (decided by this division of this court), and *Hoffman v. Allstate Insurance Co.* (1980), 85 Ill. App. 3d 631, 634. We conclude that the judgment appealed from in the instant case should be affirmed.

I

Plaintiffs argue that *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 432 N.E.2d 849, decided after the five appellate court decisions cited above, has effectively overruled them. We disagree. Neither *Sawyer* nor the appellate court opinion thereon (91 Ill. App. 3d 1134, 415 N.E.2d 565) mentioned the five opinions of the appellate court.

In *Sawyer*, the supreme court recognized an implied private right of action for violation of the Brokers Licensing Act. (Ill. Rev. Stat. 1977, ch. 111, par. 5701 *et seq.*) The court stated "our courts have continually demonstrated a willingness to imply a private remedy where there exists a clear need to effectuate the purpose of an act." (*Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 389.) However, the enactment involved in the case at bar differs from and is completely removed from the Brokers Licensing Act.

The Brokers Licensing Act did not expressly deal with or consider allowance of damages for violations of the Act. The legislature anticipated such general actions might well be brought. The fact that the Brokers Act did not expressly create a "private right of action for compensatory damages under any section of the Act [did not indicate] that the General Assembly rejected such a remedy." (*Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 391.) In the same act the legislature established "a real estate recovery fund which may be used to compensate aggrieved persons who are otherwise unable to satisfy valid judgments against registered real estate brokers and salesmen." (89 Ill. 2d 379, 390.) On the contrary, the insurance code

provides explicitly for allowance of damages to private individuals resulting from violation of that Code and then places strong and express limitations on the amount of damages which may be recovered.

## II

Plaintiffs cite and rely upon *Kelly v. Stratton* (N.D. Ill. 1982), 552 F. Supp. 641. *Kelly* was not cited by plaintiffs until their reply brief, contrary to Supreme Court Rule 341(g). (87 Ill. 2d R. 341(g).) Also, plaintiffs did not cite *Evaluation Systems, Inc. v. Aetna Life Insurance Co.* (N.D. Ill. 1982), 555 F. Supp. 116. This case was filed December 23, 1982, and it refers specifically to *Kelly*.

*Evaluation Systems, Inc.* does not expressly agree with the previous district court decision in *Kelly*. The court in *Evaluation Systems, Inc.*, carefully pointed out the weight of authority in Illinois with reference to this section of the insurance code. The court cited *Tobolt* and *Debolt*. Also, the court in *Evaluation Systems, Inc.* struck a request in the pleadings of plaintiff for 25% of its claim for $75,000 and replaced it by the ceiling of $5,000 set by section 155 of the insurance code. (555 F. Supp. 116, 121.) To the same effect, see *Abbott Laboratories v. Granite State Insurance Co.* (N.D. Ill. 1983), 573 F. Supp. 193.

Regarding *Kelly*, the district court there described the cases decided by the Appellate Court of Illinois as "unpersuasive." The district court proceeded on the theory that this section of the Code is ambiguous so as to require construction. The court accordingly quoted from the Illinois Insurance Laws Study Commission Final Report to the Governor and 80th General Assembly. The report states as follows:

> "Traditionally, punitive damages have been seldom used. However, with its new prevalence as an integral element of litigation the Commission thought that the insurance industry might have taken the opportunity to utilize Senate Bill 517 to establish statutory limits on the amount of punitive damages. This was not done. Perhaps this disinterest reflects the disquietude which the Illinois Supreme Court has had with regard to whether punitive damages may be constitutional ***." 552 F. Supp. 641, 648.

We cannot agree with the position taken by the district court in *Kelly*. On the contrary, we find expressly that this section of the Insurance Code is not ambiguous and requires no statutory construction. Apparently the same position is reached by the five cases above cited. None of these cases point out or deal with any ambiguity in the

pertinent section of the Code.

However, we need carry the mater no further. Decisions by the Federal courts, other than the United States Supreme Court, as to the law of Illinois are "certainly not binding on State courts." (*People v. Stansberry* (1971), 47 Ill. 2d 541, 545, 268 N.E.2d 431, *cert. denied* (1971), 404 U.S. 873, 30 L. Ed. 2d 116, 92 S. Ct. 121.) We will follow the five previous decisions of this court, as above cited.

The judgment appealed from is accordingly affirmed.

Judgment affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.