AMERICAN DENTAL
ASSOCIATION, Plaintiff,

v.

The HARTFORD STEAM BOILER
INSPECTION AND INSURANCE
CO., Defendant.

No. 85 C 1788.

United States District Court,
N.D. Illinois, E.D.

Dec. 6, 1985.

Peter M. Sfikas, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for plaintiff.

Steven D. Marcus, Clausen, Miller, Gorman & Witous, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Plaintiff, American Dental Association ("ADA") brings this action against The Hartford Steam Boiler Inspection and Insurance Company ("Hartford"), alleging that although ADA sustained a loss while it was covered by an insurance policy written by Hartford, Hartford has refused to pay the sum owing as a result of ADA's loss. In Count I, ADA alleges that it sustained a loss of $2,000,000, but that so far Hartford has paid only $16,036.75, leaving a balance of $1,983,963.25 due to ADA. In Count II, ADA claims that as a direct result of Hartford's wrongful conduct, ADA

has suffered the loss of the use of the principal sum owed by Hartford as well as the use of the interest on that principal sum. In Count III, ADA contends that Hartford's refusal to pay the amount of the loss is vexatious and without reasonable cause, seeking attorney's fees in bringing this action pursuant to § 155 of the Illinois Insurance Code, Ill.Rev.Stat. ch. 73, § 767 (Supp.1985) ("§ 155"), plus costs of this action. In Count IV, ADA alleges that Hartford's refusal to pay constitutes a breach of its duty of good faith and fair dealing, and seeks $250,000 in compensatory damages. Finally, in Count V, ADA requests punitive damages in the amount of $10,000,000.

Presently before the court is Hartford's motion to dismiss Counts IV and V of the second amended complaint (the "complaint"), pursuant to Fed.R.Civ.P. Rule 12(b)(6).* We have jurisdiction under 28 U.S.C. § 1332. For the reasons set forth below, Hartford's motion is granted in part and denied in part.

The facts as alleged reveal that on November 2, 1982, Hartford executed and delivered to ADA an insurance policy whereby Hartford agreed to insure ADA from January 1, 1983 until January 1, 1986, against loss of property directly damaged by an accident. On or about September 9, 1983, while the policy was in full force, ADA suffered extensive damage to the electrical system at its association headquarters, resulting in damages of $2,000,-000. ADA alleges that these damages resulted from an accident covered by Hartford's insurance policy. ADA further alleges that it has requested that Hartford make payment, but Hartford has refused, except for the approximately $16,000 partial payment described above. ADA then brought this action.

*On May 23, 1985, ADA filed its first amended complaint. Thereafter, Hartford filed its motion to dismiss Counts IV and V of the first amended complaint. ADA then filed its memorandum in opposition to the motion to dismiss and simultaneously filed a motion for leave to file a second amended complaint, which was

*Discussion*

Hartford moves to dismiss Count IV on the ground that the common law tort of breach of the duty of good faith and fair dealing is preempted by § 155 of the Code and therefore, Counts IV and V fail to state a claim upon which relief can be granted.

Section 155, entitled "Attorney fees," provides, in relevant part:

In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $5,000;

(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

It is Hartford's position that § 155 preempts both compensatory and punitive damages for any breach of the tort of good faith and fair dealing. ADA, however, takes the position that § 155 does not preempt any cause of action for the breach of the duty of good faith and fair dealing.

The parties' difference of opinion on this issue is quite understandable. The Illinois Supreme Court has not addressed the question, and the appellate courts are in strong

limited to revision of Count V. Hartford renewed its motion to dismiss in lieu of an answer to the second amended complaint, and filed a reply memorandum in support of its motion to dismiss, now directed at the second amended complaint.

disagreement over the effect of § 155. The Fifth Appellate District has held that a cause of action exists for insureds against insurers who breach their duty of good faith and fair dealing. *Ledingham v. Blue Cross Plan for Hospital Care,* 29 Ill. App.3d 339, 330 N.E.2d 540 (5th Dist.1975), *rev'd on other grounds,* 64 Ill.2d 338, 1 Ill.Dec. 75, 356 N.E.2d 75 (1976). The court in *Ledingham,* however, drew this conclusion without making any reference to § 155 and it is therefore unclear whether the court considered the statutory provision in its analysis. Furthermore, the Fifth District seems to have reversed itself, at least as to the awarding of punitive damages. *See Fisher v. Fidelity and Deposit Co.,* 125 Ill.App.3d 632, 80 Ill.Dec. 880, 466 N.E.2d 332 (5th Dist.1984). The First Appellate District has held that § 155 preempts all tort remedies. *See, e.g., Trautman v. Knights of Columbus,* 121 Ill.App.3d 911, 77 Ill.Dec. 294, 460 N.E.2d 350 (1st Dist.1984); *Kinney v. St. Paul Mercury Insurance Co.,* 120 Ill.App.3d 294, 75 Ill.Dec. 911, 458 N.E.2d 79 (1st Dist.1983); *Tobolt v. Allstate Insurance Co.,* 75 Ill.App.3d 57, 30 Ill.Dec. 824, 393 N.E.2d 1171 (1st Dist.1979). The Third District considers punitive damages to have been preempted but it has not specifically addressed the issue of compensatory damages. *See Debolt v. Mutual of Omaha,* 56 Ill.App.3d 111, 13 Ill.Dec. 656, 371 N.E.2d 373 (3d Dist.1978). The Second District has held that the statute preempts an award of punitive damages but not compensatory damages. *See Hoffman v. Allstate Insurance Co.,* 85 Ill.App.3d 631, 40 Ill.Dec. 925, 407 N.E.2d 156 (2d Dist.1980).

The issue has also been considered by several district judges here in the Northern District of Illinois, and these judges are also split on the issue. Judge Aspen has held that § 155 precludes any recovery based in tort. *See Strader v. Union Hall, Inc.,* 486 F.Supp. 159 (N.D.Ill.1980). Judge Shadur is in agreement, as he considers himself bound by the decisions of the First Appellate District. *See Abbott Laboratories v. Granite State Insurance Co.,* 573 F.Supp. 193 (N.D.Ill.1983); *Commercial Discount Corp. v. King,* 552 F.Supp. 841 (N.D.Ill.1982). Judge Marshall, on the other hand, has held that § 155 does not preclude a claim for either punitive or compensatory damages based on a tort claim. *See Roberts v. Western-Southern Life Insurance Co.,* 568 F.Supp. 536 (N.D.Ill.1983); *Kelly v. Stratton,* 552 F.Supp. 641 (N.D.Ill. 1982). Judges Hart and Moran have reexamined their rulings on the effect of § 155. Both originally held that § 155 preempts any common law tort recovery against an insurer. *See Gibe v. General American Life Insurance Co.,* No. 84 C 1280 (N.D.Ill. May 24, 1984) (Hart, J.); *Henke v. Travelers Insurance Co.,* No. 80 C 5068 (N.D.Ill. Oct. 21, 1981) (Moran, J.). However, both judges now take the position that § 155 preempts a claim for punitive damages, but does not preempt any action for compensatory damages. *See UNR Industries, Inc. v. Continental Insurance Co.,* 607 F.Supp. 855, 863–868 (N.D.Ill.1984) (Hart, J.); *Barr Co. v. Safeco Insurance Co.,* 583 F.Supp. 248, 255–256 (N.D.Ill.1984). The district judges disagree not only as to the construction of § 155, but also as to how a federal judge should arrive at his or her conclusions. We now dive into this quagmire of indecision and add our thoughts on these issues.

### I. *The Erie Question*

As an initial matter, the court must decide what its obligations are under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties are in agreement that Erie requires this court to predict what the Illinois Supreme Court would decide and to hold accordingly. This approach is favored by many of the judges in the Northern District of Illinois, particularly Judge Marshall. *See Roberts v. Western-Southern Life Insurance Co.,* 568 F.Supp. 536 (N.D. Ill.1983); *Kelly v. Stratton,* 552 F.Supp. 641, 643 (N.D.Ill.1982). *See also Strader v. Union Hall, Inc.,* 486 F.Supp. 159, 161 (N.D.Ill.1980) (Aspen, J.); *Barr Co. v. Safeco Insurance Co.,* 583 F.Supp. 248, 252–255 (N.D.Ill.1984) (Moran, J.); *UNR Industries,*

*Inc. v. Continental Insurance Co.,* 607 F.Supp. 855, 863 (N.D.Ill.1984) (Hart, J.).

The rationale is that *Erie* requires a federal court sitting in diversity to apply the law of the *state,* whether embodied in a decision by the state's highest court or in a state statute. Accordingly, when the state's highest court has not addressed an issue, and the appellate courts are in conflict over the interpretation of a state statute, the federal court should predict how the Illinois Supreme Court would rule. Judge Shadur, however, takes the position that when the intermediate appellate court decisions are in conflict and no state supreme court authority exists, our obligation in the federal courts is to decide issues of substantive law in the same way that a state trial judge sitting in the same location would decide those issues. Thus, Judge Shadur has considered himself bound by the decisions of the First District of the Illinois Appellate Court. *See, e.g., Abbott Laboratories v. Granite State Insurance Co.,* 573 F.Supp. at 196–200 (N.D.Ill.1983); *Commercial Discount Corp. v. King,* 552 F.Supp. 841, 847–852 (N.D.Ill.1982).

■ We have considered the careful analyses of both Judge Marshall and Judge Shadur. We conclude that our obligation under *Erie* is to predict the Illinois Supreme Court's resolution of the issue. First, the predictive approach of resolving undecided questions of state law has been adopted by the Seventh Circuit. *See, e.g., White v. United States,* 680 F.2d 1156, 1161 (7th Cir.1982); *Gates Rubber Co. v. USM Corp.,* 508 F.2d 603, 607 (7th Cir. 1975). This method has been accepted by other circuits as well. *See, e.g., McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 661 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980); *Warren Brothers Co. v. Cardi Corp.,* 471 F.2d 1304, 1307–1308 (1st Cir.1973).

In addition, we share Judge Marshall's concern that the Eastern Division of the Northern District of Illinois is comprised of several counties which lie in districts other than the First District of the Illinois Appellate Court and therefore Judge Shadur's approach might require a federal court to apply a rule that would not be used if the plaintiff filed in state court. *Kelly,* 552 F.Supp. at 644. As Judge Moran noted in *Barr Co. v. Safeco Insurance Co.,* 583 F.Supp. 248, 252 (N.D.Ill.1984), *Erie* implies that federal courts sitting in diversity are to apply a single body of law that can be considered the law of the entire state. In that opinion, Judge Moran articulated numerous reasons for his preference of the predictive approach, reasons we adopt fully and see no need to repeat here, except to reiterate Judge Moran's point that:

> ■f all federal courts under *Erie* were thrust into the role of state trial courts they would be bound by the law of the appellate divisions even when, as here, the law is disputed in other districts and even if an independent determination of state law would lead to a contrary result. No attempt would be made to ascertain the law of the state, as would occur in the state appellate courts and supreme court. Thus the course of litigation would differ in federal as opposed to state courts and litigants would be able to take advantage of that difference in choosing where to bring or whether to remove the case.

*Id.* at 253–254.

■ Thus, we conclude that we must try to reach the correct result by predicting how the Illinois Supreme Court would rule if faced with this issue. The appellate court decisions provide us with important data for ascertaining the relevant Illinois law, and we must, of course, give them due consideration; however, we may disregard those decisions if we are convinced that the Illinois Supreme Court would decide otherwise. *See West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *Kelly v. Stratton,* 552 F.Supp. at 645. This approach seems particularly appropriate where, as here, the disagreement among the districts is substantial. Having chosen our method of decision, we now turn to the merits.

II. *Section 155*

A. *Punitive damages*

■ A review of the case law indicates that although the courts are in conflict over the issue of compensatory damages, they are virtually all in agreement that § 155 preempts a recovery of punitive damages. *See, e.g., Hoffman v. Allstate Insurance Co.,* 85 Ill.App.3d 631, 40 Ill.Dec. 925, 928, 407 N.E.2d 156, 159 (2d Dist. 1980); *Tobolt v. Allstate Insurance Co.,* 75 Ill.App.3d 57, 30 Ill.Dec. 824, 831–833, 393 N.E.2d 1171, 1178–1180 (1st Dist.1979); *Debolt v. Mutual of Omaha,* 56 Ill.App.3d 111, 13 Ill.Dec. 656, 659–661, 371 N.E.2d 373, 376–378 (3d Dist.1978). The only Illinois appellate court arguably holding to the contrary is *Ledingham v. Blue Cross Plan for Hospital Care,* 29 Ill.App.3d 339, 330 N.E.2d 540 (5th Dist.1975), *rev'd on other grounds,* 64 Ill.2d 338, 1 Ill.Dec. 75, 356 N.E.2d 75 (1976). The court in *Ledingham* acknowledged the general rule that punitive damages may not be recovered in an action for breach of contract, but then went on to hold that if an insurer breaches the duty of good faith and fair dealing, the insured has a separate cause of action that sounds in tort. Accordingly, an action for punitive damages can lie.

The *Ledingham* decision made no mention of § 155, and is therefore of little help as we cannot discern whether the court considered that section at all. The precedential value of the opinion is even further diluted by the fact that a subsequent decision of the Fifth District held that "[i]n adopting paragraph 767, the legislature preempted the field for recovery of punitive damages for refusal to pay, barring the common law action for such remedies." *Fisher v. Fidelity and Deposit Co.,* 125 Ill.App.3d 632, 80 Ill.Dec. 880, 887, 466 N.E.2d 332, 339 (5th Dist.1984).

In light of the strong consensus in the Illinois appellate courts on the issue of punitive damages, we predict that the Illinois Supreme Court would find that such damages are preempted by § 155. In addition, our own examination of the statute leads us to the same result. Before 1977, § 155 provided for recovery of attorney's fees and other costs of bringing an action against an insurer which had acted vexatiously and unreasonably in refusing to settle the claim. In 1977, the statute was amended to permit recovery of an amount in addition to attorney's fees and costs. Thus, the 1977 amendment made even more explicit that the statute is basically punitive in nature. This court again agrees with Judge Moran's analysis in *Barr Co. v. Safeco Insurance Co.,* 583 F.Supp. 248, 255 (N.D.Ill.1984), and also with Judge Hart's finding that the legislature's linking of an award under the statute to the *insurer's* misconduct suggests that at least one purpose of the section was to punish misbehaving insurance companies. *UNR Industries, Inc. v. Continental Insurance Co.,* 607 F.Supp. 855, 865 (N.D.Ill.1984). The statute is now punitive on its face, and it has always been punitive in nature. Accordingly, we decline to follow Judge Marshall's holdings that punitive damages are not preempted by the statute, and we hold, in accordance with several other judges in the Northern District of Illinois, that ADA's claim for punitive damages is preempted by § 155. *See, e.g., Thiel v. Prudential Insurance Co.,* No. 85 C 1645 (N.D.Ill. Dec. 3, 1985) (Decker, J.); *UNR Industries, Inc. v. Continental Insurance Co.,* 607 F.Supp. 855, 866 (N.D.Ill.1984) (Hart, J.); *Barr Co. v. Safeco Insurance Co.,* 583 F.Supp. 248, 256 (N.D.Ill.1984) (Moran, J.); *Abbott Laboratories v. Granite State Insurance Co.,* 573 F.Supp. 193, 195 (N.D.Ill.1983) (Shadur, J.). *But see, e.g., Kelly v. Stratton,* 552 F.Supp. 641, 646–649 (N.D.Ill.1982) (Marshall, J.). Therefore, Hartford's motion to dismiss Count V of the complaint is granted.

B. *Compensatory damages*

■ Although the appellate courts are in basic agreement on the question of punitive damages, the issue of whether compensatory damages are recoverable is more hotly disputed. We conclude that the language of § 155 does not operate to preempt

awards of compensatory damages. The statute provides for recovery of attorney's fees, other costs, and an additional amount. That amount is some proportion of the amount a plaintiff would be entitled to recover under the *contract*, not to exceed $5,000. The amount recoverable is in no way reflective of the damages actually incurred by an insured because of an insurer's unreasonable failure to make payments owed. *See Barr*, 583 F.Supp. at 255.

Judge Hart, after an extensive analysis of the legislative history and case law, concluded that no legislative intent existed to address the problem of compensating plaintiffs for damages sustained because of an insurer's vexatious and unreasonable failure to pay. Judge Hart stated:

> The substance of the statute ... belies any intent to preempt compensatory damages, since the provisions of § 155 are fully explainable in terms of a punitive purpose, and some of its provisions are *only* explainable in terms of that purpose.... [Section] 155 applies only when the insurer's conduct was vexatious and unreasonable. That limitation makes perfect sense if the award is intended to punish the defendant, but little sense if the award is intended to compensate the plaintiff since the need for compensation is wholly independent of the vexatiousness of the insurer's conduct.

*UNR Industries, Inc. v. Continental Insurance Co.*, 607 F.Supp. 855, 866 (N.D.Ill. 1984) (emphasis in original).

Judge Hart further found that the 1977 amendments did not provide any new indications of an intent to address the issue of compensation:

> As with the original version, the legislative history contains no suggestion of such intent. Nor do the amendments themselves show such an intent. The amendment removing the limit on the amount of attorneys' fees recoverable may make more suits against insurers economically feasible but does nothing to compensate the plaintiff for the damages giving rise to the suit. Similarly, the award of a sum not to exceed $5,000,

being governed by the same standards as the attorneys' fees award of the original section, is no more related to compensation than the original statute was.

*Id.* at 866–867.

We agree with Judge Hart's analysis, and therefore view the Second District's position, permitting a claim for compensatory damages, but finding preemption as to punitive damages, as the correct interpretation of § 155. *See Hoffman v. Allstate Insurance Co.*, 85 Ill.App.3d 631, 40 Ill. Dec. 925, 407 N.E.2d 156 (2d Dist.1980). Because we predict that the Illinois Supreme Court would permit compensatory damages to be awarded, Hartford's motion to dismiss Count IV of the complaint is denied.

### Conclusion

For all the foregoing reasons, Hartford's motion to dismiss Count IV of the complaint is denied. The motion to dismiss Count V is granted.